### FIRST NAT. BANK OF CHICAGO v. SELDEN.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1903.)

#### No. 927.

1. NATIONAL BANKS—DISTRIBUTION OF ASSETS IN INSOLVENCY—HOLDERS OF OUTSTANDING DRAFTS.

When a national bank has been placed in the hands of a receiver as insolvent, the federal law becomes from that moment the law of the distribution of its assets to the exclusion of the law of any state; and a second bank, which holds a deposit of funds of the insolvent bank, against which the latter has drawn drafts which have not been paid, cannot pay the same after notice, and set up the payment as a defense to an action by the receiver to recover the deposit, although by the law of the state in which the second bank is located a draft or check is held to be an assignment pro tanto of the fund on which it is drawn; since by the federal law it is not such an assignment as entitles the holder to a preference over the other creditors when the drawer has become insolvent before payment.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Orville Peckham, for appellant.

Before JENKINS, GROSSCUP and BAKER, Circuit Judges.

GROSSCUP, Circuit Judge. The bill in the Circuit Court was to enjoin the prosecution by appellee of a certain action at law, against the appellant, pending in the United States Circuit Court for the Northern District of Illinois. The cause came on for hearing, upon demurrer to the bill, and upon a motion for a preliminary injunction; whereupon a decree was entered, refusing the motion, sustaining the demurrer, and dismissing the bill for want of equity. From this decree this appeal is prosecuted.

The bill in substance alleges: That the complainant and the First National Bank of Niles were both national banking associations, the former located at Chicago, in the state of Illinois, and the latter at Niles, in the state of Michigan; that the latter had long kept an account as a depositor with the former on which it had been accustomed to draw and issue checks; that on the 9th day of March,

1901, the Niles bank was insolvent, and on or about that date it failed to redeem its circulating notes; whereupon it was on that date closed under the authority of the Comptroller of the Currency, and the defendant herein, Joseph W. Selden, was by the Comptroller, appointed as its receiver and took charge of its affairs and entered upon the discharge of his duties as such receiver; that of these facts the Chicago bank had notice on said 9th day of March, 1901, but not before; that on that date also the receiver notified the Chicago bank not to pay any drafts or checks theretofore issued by the Niles bank.

The amended bill further alleges that at the close of business on March 9, 1901, the Niles bank had a balance of account standing to its credit on the books of the Chicago bank of $9,179.39. Thereafter the Chicago bank credited certain items, and incurred certain expenses, and made certain remittances, on account of the Niles bank or its receiver, none of which is questioned, which reduced the balance to $5,792.21; that prior to March 9, 1901, twenty-seven checks, amounting in the aggregate to $5,792.21 had been drawn and issued by the Niles bank on the Chicago bank in the regular course of business, all of which were outstanding when the receiver was appointed, as aforesaid. After that date and before April 4, 1901, all of said checks, at times respectively when the balance aforesaid was sufficient in amount for their payment, were presented for payment to, and payment was refused by, the Chicago bank, pending an inquiry into the rights of the various parties interested. All of said twenty-seven checks or drafts were issued to, and held by, bona fide holders thereof for value. Afterwards eighteen of them, to a total amount of $4,910, were again presented, and on such second presentation were paid by the Chicago bank and charged, when paid, against the Niles bank, thus further reducing the balance standing to the credit of the Niles bank as aforesaid; that the remaining nine checks, being those only once presented as aforesaid, and not paid, amount to $882.21; and eight of these, amounting to $878.30, have, since the Chicago bank refused to pay them as aforesaid, been presented by the holders to and allowed by the receiver as claims against the Niles bank; and these eight the Chicago bank, prior to the fourth day of April, 1901, offered to pay to the receiver if he would present them for payment as the holder and owner thereof.

On April 4, 1901, the receiver demanded of the Chicago bank payment of $5,792.21; being the amount which would be the balance to which the receiver as such would be entitled, if none of the twenty-seven drafts had been presented for payment as aforesaid. The Chicago bank refused to comply with this demand, and thereupon the receiver brought the action in the United States Circuit Court for the Northern District of Illinois, Northern Division, the prosecution of which this bill was brought to restrain. In that action the receiver sought to recover the amount of said twenty-seven drafts, being $5,792.21, notwithstanding the payment by said Chicago bank as aforesaid of eighteen of said checks, and the presentation of the remaining nine thereof for payment, at times, respectively, when the Chicago bank had funds sufficient for the payment thereof standing to the credit of said Niles bank in its account as depositor.

The bill further alleges, that under the law of Illinois, a bona fide holder of a check or draft on a bank may, if payment thereof be refused when the bank has funds of the drawer subject to check sufficient in amount to pay it, bring an action at law on such check, immediately against such bank; the check, as between drawer and bona fide holder, being regarded as an assignment in law, pro tanto, of the balance which the bank owes to its depositor, the drawer of the check. And such seems to be the settled law of Illinois. Munn v. Burch, 25 Ill. 35; Bank v. Jones, 137 Ill. 634, 27 N. E. 533, 12 L. R. A. 492, 31 Am. St. Rep. 403; Bank of Antico v. Union Trust Co., 149 Ill. 343, 36 N. E. 1029, 23 L. R. A. 611.

The bill further alleges that the law as declared and administered in the federal courts is opposed to, and irreconcilable with, the Illinois law as stated above; that in the federal courts a check holder, as such, cannot maintain either an action at law or a suit in equity against the bank on which the check is drawn; the check being held, as between maker and payee, not to be an assignment pro tanto, even in equity, of the indebtedness owing by the bank upon which the check has been drawn. This averment of the law, under the federal rule, is supported in the cases of Bank v. Schuler, 120 U. S. 511, 7 Sup. Ct. 644, 30 L. Ed. 704, Bank v. Yardley, 165 U. S. 634, 17 Sup. Ct. 439, 41 L. Ed. 855, and other cases.

The bill then avers that the Chicago bank as a citizen of Illinois, doing business there, was subject to the processes of both the state and federal courts; that it could not have successfully defended, in the state courts, against actions by the check holders, and that the pendency of such actions or judgments therein would have given it no defense in the federal court against the receiver; that it would have been a serious injury to appellant in its business of banking, and would in no way have benefited the Niles bank, or its receiver, to allow such actions to be brought and prosecuted in the state courts; wherefore the appellant was justified in preventing such actions, by paying the checks presented for payment as aforesaid, and asking the federal court, as in the bill presented, to restrain a suit by the receiver, that would in substance compel the bank to pay the same debt a second time, and to virtually the same party who got the benefit of the first payment.

In Bank v. Schuler, 120 U. S. 511, 7 Sup. Ct. 644, 30 L. Ed. 704, it was decided, that as between the right of general creditors in a fund received from a bank by an assignee under a general assignment for the benefit of creditors, and the payee of an outstanding check or draft, there was no such equitable assignment pro tanto, of the funds in the drawee's possession, as gave to such payee a priority over the general creditors. This, unquestionably, is the law, also, respecting funds in the hands of a receiver of a national bank, appointed by the Comptroller. In each case the purpose is to obtain a ratable distribution of the insolvent bank's assets. In neither case, in the absence of an assignment more effective than the drawing of a check, will the federal law allow one set of creditors to obtain an advantage over another set.

The Niles bank, as an insolvent, in the hands of the receiver ap-

pointed by the Comptroller, in the interest of creditors, stands toward the Chicago bank, in a relation different from the relation between the Niles bank, solvent, and the Chicago bank. In the latter, the creditors of the Niles bank would have no immediate interest in any ratable distribution of the funds; in the former, the interest is immediate and urgent.

Now, while it may be questioned, whether as against the Niles bank, solvent, the Illinois bank might not, as to the payment of check and draft holders, act under the Illinois law as against the law prevailing in federal courts; and, thus acting, defend, even in the federal court, against an effort to compel a second payment; it is clear that as against the receiver, executing his trust, the federal law alone is applicable. In such a case the federal trust must be administered according to the mandate of federal law. The moment the Niles bank went into the hands of the receiver, the federal law became the law of the distribution of its assets. In no other way could there be unity of administration, and a carrying out of the federal mandate of equality. All this, the Chicago bank is bound to have known, and the rule for distribution prescribed, the Chicago bank was bound to observe. That the Illinois law on the subject of checks and drafts, and their effect as assignments at law, was different, is no excuse; for, in the winding up of national banks by the federal authorities the Illinois law cannot be allowed to displace the federal law looking to a ratable distribution among the creditors.

Nor was the situation of the Chicago bank, upon presentation of the checks by the check-holders, an intolerable one. It could have defended, even in the state courts, by pleading the insolvency of the Niles bank, and the federal law that controls the administration of such affairs. The state courts, as well as the federal courts, enforce federal law, and are bound thereby; and from any decision, adverse to the federal law, an appeal could have been taken to the Supreme Court of the United States. Of course this meant law-suits—or possibly, by bill of interpleader, a law-suit—but inconveniences thus occasioned are not defenses against the substantial rights of the creditors of the insolvent Michigan bank.

The decree of the Circuit Court dismissing the bill is affirmed.