SUPERIOR NATIONAL BANK, APPELLANT, v. NATIONAL BANK OF COMMERCE, APPELLEE.

FILED MAY 13, 1916.   No. 18635.

1. **Banks and Banking**: CHECKS: ASSIGNMENT OF FUNDS. Section 188 of the negotiable instruments act (Laws 1905, ch. 83, Rev. St. 1913, sec. 5506) changes the law of this state as it was formerly construed. By that section a check upon a bank does not of itself operate as an assignment of the funds of the drawer. It is the acceptance or certification of the check by the bank on which it is drawn that operates as a transfer of the funds.

2. ———: ———: ACCEPTANCE. By section 188 of the act the bank upon which a check is drawn is not liable to the holder of the check "unless and until it accepts or certifies the check," and such acceptance or certification must be in writing.

3. ———: ———: LIABILITY OF DRAWEE. The bank upon which a check is drawn will not become liable in equity to the holder thereof by stating orally to such holder that the check is good and will be paid on presentation, in the absence of fraud or deception on its part.

99 Neb.—53

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Field, Ricketts & Ricketts,* for appellant.

*Hainer & Craft, contra.*

SEDGWICK, J.

On the 8th day of January, 1914, the First National Bank of Superior, in the regular course of business, executed and delivered to the Superior National Bank its check on the National Bank of Commerce of Lincoln, in the following form:

"First National Bank.                                  No. 5588.
76-137                      Superior, Neb., Jan. 8, 1914.
Pay to the order of Sup. Nat. Bank $10,856.07 ten thousand eight hundred fifty-six and 07/100 dollars, payable if desired in Chicago or New York exchange at par.
To National Bank of Commerce, Lincoln, Neb. 43-3.
                          "Ila L. Adams, A. Cashier."

On that same evening the First National Bank of Superior closed its doors. On the next day the National Bank of Commerce of Lincoln refused payment of the check on presentation, and this action was brought by the Superior National Bank to recover the amount of the check and interest. After the parties introduced their evidence, the court instructed the jury to find a verdict for the defendant, and the plaintiff has appealed.

The briefs of the respective parties are comprehensive and interesting; but, so far as we can see, the result of this case depends upon the construction of certain sections of our negotiable instruments law. Laws 1905, ch. 83. In an attempt to make the law of negotiable instruments uniform throughout the United States, nearly all of the states have now enacted this statute. In furtherance of this attempt at uniformity, the courts, so far, have aimed at a uniform construction of its provisions. We think that certain sections of this act and the construction that has been put upon them by the courts of other states simplify

this case and make it unnecessary to discuss all of the various questions so interestingly presented.

As we have already said, when this check was presented to this defendant bank, the bank refused to accept or certify the same, and insists now that section 188 of the act controls, and that under this section the defendant is not liable upon this check. That section is as follows: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check." It appears that soon after the check was received by the plaintiff bank an officer of the bank called the defendant bank by telephone and inquired whether the check was good. There is so much conflict in the evidence as to the exact language used by either party in this telephone communication that the plaintiff rightly insists that, if the liability of the defendant depends upon the construction to be given to this conflicting evidence, that question should have been submitted to the jury.

The question remains whether the liability of the defendant bank could be fixed by notification or conversation over the telephone. The plaintiff contends that there is an inherent difference between the acceptance and the certification of a check by the bank upon which it is drawn, and that, while the acceptance must be in writing, the certification may be oral. The plaintiff also insists that, even if the certification must be in writing, and although the statute expressly provides that the "check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank," still the delivery of this check to the plaintiff bank for full consideration and the oral statement by defendant that "the check is good," made to plaintiff while the plaintiff still had the option to return the check and to refuse to receive it from the drawer in settlement of their accounts, would operate as an equitable assignment of the funds then in the bank to the credit of the drawer of the check. In some respects there may be a

difference between an acceptance and the certification of a
check, but is there any difference that affects the question
presented in this case?   Section 188 changes the law in this
state as it was formerly construed, and that section has been
considered and construed in *Hentz v. National City Bank,*
159 App. Div. (N. Y.) 743; *Rambo v. First State Bank,*
88 Kan. 257; *Baltimore & O. R. Co. v. First Nat. Bank,* 102
Va. 753; *Van Buskirk v. State Bank,* 35 Colo. 142; *Tibby
Bros. Glass Co. v. Farmers & Mechanics Bank,* 220 Pa. St.
1.   "Where a check is certified by the bank on which it is
drawn, the certification is equivalent to an acceptance."
Laws 1905, ch. 83, sec. 186.   "Where the holder of a check
procures it to be accepted or certified, the drawer and all
indorsers are discharged from liability thereon."   Section
187.   The certification of the check at common law was by
indorsement thereon in writing, and by the express provi-
sion of the statute itself is "equivalent to an acceptance."
In the provision that the bank shall not be liable to the
holder "unless and until it accepts or certifies the check,"
the common law method of certifying a check is clearly in-
tended.   The evidence on the part of the plaintiff is that
in the conversation over the telephone the officer of the
defendant bank said that "the draft was good and they
knew their business, if I would send the item to him they
would give us Chicago or New York exchange," while that
officer himself testified: "I told him it was good now;
*   *   *   there was no reference to the payment of the
draft at all."   This discrepancy illustrates the necessity
of a definite provision so that the liability upon negotiable
paper can be fixed beyond the uncertainty of misunder-
standing communications by telephone, or indeed any oral
communications.   The plain intention of the statute is that
the bank upon which the check is drawn shall not be liable
upon the check unless the evidence of the acceptance or
certification of the check is reduced to writing.

If this communication by telephone could be construed
with the other evidence as operating as an equitable as-
signment of the funds in the bank, the purpose of the stat-

ute would be thwarted. There is, of course, no doubt that as between the maker of the check and the drawee an oral agreement transferring the funds of the maker of the check in the bank would be binding upon the parties to that agreement. In the Kansas case above cited it was expressly held: "A bank is not liable on equitable grounds to the holder for the amount of an unaccepted check which it has refused to pay because the holder acquired the check on the oral representation of the bank that the drawer had funds on deposit to meet the check, that the check was good, and that the holder might safely take it in payment for goods sold the drawer."

As we understand the statute, the judgment of the district court is right, and is

AFFIRMED.

FAWCETT, J., not sitting.