FERD SOPPE ET AL., APPELLANTS, v. M. J. MECHALEY, DE-
FENDANT: LAMRO STATE BANK, APPELLEE.
JESS BURNS, APPELLANT, v. M. J. MECHALEY, DEFENDANT:
LAMRO STATE BANK, APPELLEE.

FILED MARCH 27, 1919. No. 20330.

1. **Bill of Exchange:** ASSIGNMENT OF FUNDS. "A bill of itself does
not operate as an assignment of the funds in the hands of the
drawee available for the payment thereof." Rev. St. 1913, sec.
5444.

2. ———: ———. In order that a draft or order may operate as
an equitable assignment of moneys belonging to the drawer in
the hands of the drawee, it must be drawn against a specific
fund or debt with such particularity as will clearly show the in-
tention of the parties to charge the special fund.

3. ———: PROMISE TO HONOR NONEXISTING BILL. In order that a
promise to honor a nonexisting bill shall be enforceable, the
promise must so describe the bill that there can be no doubt
of its application to it.

APPEAL from the district court for Douglas county:
ALEXANDER C. TROUP, JUDGE. *Reversed, with direc-
tions.*

*Crane, Boucher & Sternberg* and *Frank C. O'Hol-
laren,* for appellants.

*Switzler, Goss & Switzler* and *Windsor Doherty,*
contra.

MORRISSEY, C. J.

Defendant Mechaley was a purchaser of live stock at
Winner, South Dakota. January 6, 1917, he purchased
hogs of each of the plaintiffs. and also from other
parties, who have assigned their claims to plaintiff
Burns. He gave checks upon the Lamro State Bank
for the respective amounts. The checks were sub-
sequently dishonored. The hogs purchased were ship-
ped to the Omaha Live Stock Commission Company,
which sold them and credited the proceeds, viz.
$3,234.74, to Mechaley's account.

Prior to this time Mechaley applied to the Lamro State Bank for a loan, or extension of credit, to be covered by a draft on the commission company. January 4, 1917, the bank inquired of the commission company, by telephone, if it would honor Mechaley's draft. The company replied, both by telephone and by letter: "We will pay Mr. Mechaley's drafts for the net proceeds of any stock billed to us, but will not pay these drafts ahead of shipment."

The bank took Mechaley's draft for $3,000 and presented it to the commission company. The draft was in terms as follows:

"Winner, S. D., Jany. 5, 1917.
"Pay to the order of Lamro State Bank $3,000 three thousand and no/100 dollars. With exchange. Value received and charged to account of

"M. J. Mechaley.
"To Omaha Live Stock Com. Co., Omaha, Nebr."

The commission company refused to accept, or pay, the draft because it had been notified that a third party was claiming an interest in the proceeds of the shipment. The draft was presented a second time and payment again refused. A few days later plaintiffs sued Mechaley and the commission company, as garnishee, and the bank intervened. The commission company thereupon filed an affidavit asking for a determination of the rights of the adverse claimants, and offered to pay the money into court, or to such person as the court should direct. The company voluntarily agreed to pay, and did pay, to the bank so much of the fund held by it as was not necessary to safely cover the attachments and costs of suit.

The contention of the bank is that the draft operated as a valid assignment of $3,000 of the funds held by the commission company, and to this extent constituted a superior lien to that of the attaching creditors. It is argued that the draft was drawn against a special fund; that the drawee had agreed to pay the draft

out of this fund; and that the draft therefore carried title to the fund against the attaching creditors.

Did the bank have a valid and enforceable assignment of the fund in the amount of the draft? The district court held that it did.

Section 5444, Rev. St. 1913, provides: "A bill of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof." In order that a draft or order may operate as an equitable assignment of moneys belonging to the drawer in the hands of the drawee, it must be drawn on a specific fund or debt. The draft or bill in this case did not specify the fund out of which it was to be paid, nor was there anything to show that it was intended by the drawer to be drawn against a particular fund. It was chargeable to Mechaley's general account, and did not even cover the total amount due Mechaley from the commission company. Had Mechaley made subsequent consignments to the commission company, we see no reason why the bill might not have been paid, with equal propriety, out of such proceeds as out of the funds in question.

The bank did not have such interest in the fund as would defeat plaintiffs' attachments, unless some force can be given to the letter of the commission company, previously referred to, in which it expressed its willingness to honor Mechaley's drafts when it should hold sufficient funds with which to pay them. But such promise could not of itself operate as an assignment of the fund in suit or an acceptance of the draft in question. A promise to accept, or honor, a nonexisting bill must clearly identify the bill, or it is not enforceable. 1 Daniels, Negotiable Instruments (6th ed.) sec. 560.

The judgment of the district court is reversed, and the cause remanded, with directions to enter judgment in accordance with this opinion.

REVERSED.

The following opinion on motion for rehearing was filed December 15, 1919. *Former judgment of reversal vacated, and judgment of district court affirmed.*

1. **Bill of Exchange:** ASSIGNMENT OF FUNDS. A written promise by a stock commission company to a bank to accept nonexisting bills of exchange to the amount of the net proceeds of stock shipped to it by the drawer—when the bank has taken a bill of exchange from the shipper for a valuable consideration, and live stock has been shipped to and sold by the drawee with proceeds in excess of the amount of the bill—binds the drawee and acceptor and operates to transfer the proceeds in its hands to the payee, to the amount of the bill, and the same are not liable to attachment or garnishment by other creditors.

2. ———: ———. Where in such a transaction neither the drawer nor drawee is asserting any right to the fund as against the payee. no other creditor of the drawer, in the absence of fraud, has any right to such proceeds.

LETTON. J.

Plaintiffs are creditors of M. J. Mechaley, being holders of bank checks issued by him in payment for live stock purchased on the 2d and 6th of January, 1917, and presented after January 8, 1917, payment of which checks was refused by the Lamro State Bank upon which they were drawn, on account of lack of funds.

Mechaley was a stock buyer and shipper at Winner, South Dakota. It was his custom to purchase hogs and cattle, ship them to commission firms, and draw a sight draft for the proceeds upon the firm to which the cattle were shipped. Mechaley's account was overdrawn and he was denied further credit. On January 4, 1917, the Lamro State Bank telephoned to the Omaha Live Stock Commission Company, inquiring if it would pay drafts issued by Mechaley for the net proceeds of any stock shipped to it by him. The company replied both orally and by a letter written that day: "We will pay Mr. Mechaley's draft for the net proceeds of any stock billed to us, but will not pay those drafts ahead of ship-

ment.'' On Saturday, January 6, a car of hogs and one of cattle purchased by Mechaley were being delivered in the yards of the railway company at Winner to be loaded the next day. On that day Mechaley delivered to the bank a draft upon the commission company for the sum of $3,000 in favor of Lamro State Bank. The live stock was shipped on Sunday, January 7, and arrived in South Omaha on Monday morning, January 8. After its arrival that morning, the commission company received the following telegram:

"January 7, 1917.

"Omaha Live Stock Commission Co.,
          "Omaha, Neb.

"Calling your attention to shipment two cars stock by Mechaley today, car number nine O five nine three, eighty hogs, car number two five one seven five, twenty-four cattle.

"We have M. J. Mechaley draft on you for three thousand, will be presented by Live Stock National Bank, also hold mortgage on stock. Pay Mechaley no money under any circumstances.

"Lamro State Bank."

Later in the day the commission company were informed by another commission man that a bank at Winner had sent him word that some persons in Winner, South Dakota, were claiming part of the proceeds of the sale. The draft was presented to the commission company that day through a local bank at South Omaha, and payment was refused on account of this notice. Afterwards, on January 29, an action was begun against Mechaley by Soppe, one of the creditors mentioned, and the commission company was served with garnishee process. The garnishee answered, stating that it had sold stock for Mechaley to the net amount of $3,233.74; that Mechaley had drawn a sight draft for the proceeds in favor of the Lamro State Bank which had been presented for payment, and that it had been notified that

$148.66 was claimed on an account by Ferd Soppe against Mechaley; that it has no interest in the money, but offers to bring it into court so that parties may interplead. The Lamro State Bank then filed a petition in intervention, claiming the sum of $3,000 by virtue of the draft and its acceptance. The answer to the petition in intervention admits that on February 2 the Live Stock Commission Company paid to the Lamro State Bank $2,342.18 from the proceeds of the sale, so that it is undisputed that the company has retained in its hands, or paid into court, $657.79 to meet the claims of plaintiffs in case it should be found that their right to the money was superior to that of the Lamro State Bank.

The commission company, drawee of the draft, is raising no question as to its validity or acceptance, and makes no objection to the payment of the draft. The only question presented is whether the garnishment by the creditors can take precedence of the transfer of the funds made by the drawing and acceptance of the draft.

Section 5449, Rev. St. 1913, provides that the acceptance of a bill must be in writing and signed by the drawee.

Section 5451 recognizes the validity of an acceptance written on paper other than the bill itself, and provides that "it does not bind the acceptor except in favor of a person to whom it is shown and who, on the faith thereof, receives the bill for value."

Section 5455, provides: "A bill may be accepted before it has been signed by the drawer or while otherwise incomplete."

Section 5456. "An acceptance is either general or qualified."

Section 5458. "An acceptance is qualified which is: First—Conditional, that is to say, which makes payment by the acceptor dependent upon the fulfilment of a condition therein stated. * * * Fourth—Qualified as to time."

The bank delivered Mechaley's note to him, relying upon the delivery of the draft, and the written promise to pay in the letter of the commission company. The promise to accept and pay is an acceptance, says Lord Ellenborough in *Wynne v. Raikes*, 4 East (Eng.) 514, followed in *Scudder v. Union Nat. Bank*, 1 Otto (U. S.) 406, 23 L. ed. 245. The acceptance was qualified in that it made payment by the acceptor dependent upon the shipment and receipt of stock. As soon as the stock was shipped and received, if the proceeds in the hands of the commission company equalled or exceeded the amount of the bill, the conditions and qualifications were fulfilled, and the bill operated. as an assignment of the money in the commission company's hands. This is admitted by the drawee, since it paid $2,342.18 to the bank upon the sole ground that it was authorized to do so by the draft, and its acceptance.

Mechaley having received a valuable consideration in good faith for the draft, he and those claiming under him are estopped to assert that, upon its acceptance by the drawee, it did not transfer the fund *pro tanto*. The transaction between the bank and the commission company was completed by the letter of acceptance, the notification to the commission company that the stock was shipped in accordance with the conditions of its acceptance, and by the receipt of the proceeds of the sale. Since the title to the fund had passed from Mechaley, and an attaching creditor can only reach the property of the debtor, the garnishment could only affect the interest of Mechaley in the excess of the proceeds of sale over the amount of the draft.

In *Scudder v. Union Nat. Bank, supra*, it is said: "It is a sound principle of morality, which is sustained by well-considered decisions, that one who promises another, either in writing or by parol, that he will accept a particular bill of exchange, and thereby induces him to advance his money upon such bill, in reliance upon his promise, shall be held to make good his promise. The

party advances his money upon an original promise, upon a valuable consideration, and the promisor is, upon principle, bound to carry out his undertaking. Whether it shall be held to be an acceptance, or whether he shall be subjected in damages for a breach of his promise to accept, or whether he shall be held to be estopped from impeaching his word, is a matter of form merely. The result in either event is to compel the promisor to pay the amount of the bill with interest.''

The following cases support the conclusions reached in the opinion: *Nelson v. First Nat. Bank,* 48 Ill. 36; *Hall v. First Nat. Bank,* 133 Ill. 234; *McCausland v. Wheeler Savings Bank,* 43 Ill. App. 381; *Milwaukee Corrugating Co. v. Traylor,* 95 Kan. 562; *Storer v. Logan,* 9 Mass. 55; *Putnam Nat. Bank v. Snow,* 172 Mass. 569; *First Nat. Bank v. First Nat. Bank,* 210 Fed. 542; *Fourth Street Bank v. Yardley,* 165 U. S. 634; See, also, 7 Cyc. 776, 777.

The district court found that the $657.79 remaining in the hands of the commission company belonged to the intervening bank. This judgment was right. The former judgment and opinion in this case is vacated, and the judgment of the district court is

AFFIRMED.

MORRISSEY, C. J., and ROSE, J., dissent.