HARRISON STATE BANK, APPELLANT, v. FIRST NATIONAL BANK OF OMAHA ET AL., APPELLEES.

FILED FEBRUARY 13, 1928. No. 25520.

*S. L. Winters*, for appellant.

*Congdon, Finlayson & Burke, Boyd & Metz, E. D. Crites, F. A. Crites* and *Brome & Ramsey, contra.*

Heard before ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

THOMPSON, J.

Appellant brought this suit in the district court for Douglas county to recover judgment for the sum of $1,685.79, with interest, against the appellee First National Bank of Omaha, and for equitable relief against it and other appellees. Judgment was entered in favor of each appellee, and the action dismissed at appellant's costs, to reverse which it appeals.

For the sake of brevity, the parties to this suit will be designated herein as follows: Appellant as plaintiff; First National Bank of Omaha as defendant; First National Bank of Harrison as Harrison National Bank; Ralph S. Pryce, receiver, who was succeeded during the trial by Harry Hall, as receiver; Sioux National Bank of Harrison as Sioux Bank.

As a basis for the equitable relief sought, the plaintiff alleged, in substance: That the Harrison National Bank and the plaintiff were situate at Harrison, Nebraska; that it was customary between them to meet on the afternoon of each day, in one or the other of the banks, to clear such day's business as between them, which was done by totaling the respective amounts of checks paid by the one for the other, and each giving to the other its check for the sum of such respective totals, drawn on its correspondent bank, in which it had deposited money for that purpose; that such custom was by each of the payees, as to the checks herein involved, relied upon, as was well known to each of the correspondent banks; that by reason thereof

the respective checks in suit were each an equitable appropriation *pro tanto* of the funds so held by the bank on which it was drawn and that such fund to that extent was not affected by the insolvency of the Harrison National Bank, nor subject to offset on other of its indebtedness owing to the depository bank.

The facts leading to this deduction on the part of plaintiff were each and all denied by the defendant. Without entering into a discussion as to the effect of the federal statute regulating the priority of liens in the distribution of the assets of an insolvent national bank, and the construction given to such statute by the courts of the United States as evidenced by the conclusion reached in *First Nat. Bank of Chicago v. Selden,* 120 Fed. 212, and *Cook County Nat. Bank v. United States,* 107 U. S. 445, and other cases, it is sufficient to say that the evidence adduced as reflected by the record does not sustain the plaintiff's allegations, but on the contrary reveals the following pertinent facts: That the plaintiff and defendant banks are corporations organized under the law, for the purpose, and located, as by their respective names indicated, and were operating as such at the dates covered by the transactions here receiving our consideration. However, the Harrison National Bank became and was insolvent on and prior to the 4th day of February, 1924, and at the close of business on February 2, 1924, closed its doors, and by order of the comptroller of the currency, owing to such insolvency, such doors were never reopened. On the 12th day of February, 1924, a receiver was duly appointed to wind up its affairs, in pursuance of which its assets were sold as hereinafter indicated. In the course of its business the Harrison National Bank had as its correspondent bank the defendant, wherein it kept a reserve account subject to check or draft in the ordinary course of business, and plaintiff had as its correspondent the Live Stock National Bank of Omaha (hereinafter referred to as Live Stock Bank), in which it kept a deposit similar to that of the Harrison National Bank. Plaintiff and the

Harrison National Bank, as was their usual practice, met on the afternoon of each day, by and through their respective representatives, and each gave to the other a draft (called by plaintiff a check) for the full amount of clearances for that day on its correspondent bank. In pursuance of this practice, on February 1, 1924, the Harrison National Bank executed by its assistant cashier and delivered to plaintiff a draft drawn on defendant for $475.30, payable to J. L. Gerlach, plaintiff's cashier, and for the plaintiff's use and benefit; and on the same day and at the same time J. L. Gerlach, as such cashier of plaintiff, executed and delivered to the Harrison National Bank a draft on the Live Stock Bank for $1,975.26, the same being the amount due from plaintiff to such Harrison National Bank for the day's business. On the following day the Harrison National Bank executed by its assistant cashier and delivered to plaintiff a draft drawn on defendant for $1,210.49, payable to J. L. Gerlach, cashier of plaintiff, and for the latter's use and benefit; and on the same day and at the same time J. L. Gerlach, as plaintiff's cashier, executed and delivered to the Harrison National Bank a draft drawn on the Live Stock Bank for $2,462.78, which was the amount then due the Harrison National Bank from plaintiff on such day's business. The two drafts held by the Harrison National Bank were forwarded to defendant to be collected and credited by it to the deposit account of the sending bank. The two drafts held by plaintiff were forwarded to the Live Stock Bank for collection and credit to plaintiff's deposit account. The Live Stock Bank, however, was first to present its two drafts to defendant for payment, which it did on February 4, 1924. Payment thereof was refused by defendant, for the reason that the Harrison National Bank had closed its doors to business under the order of the comptroller of the currency, owing to its insolvency, and further that defendant had been so notified. These two drafts were duly protested for the above indicated reasons, and form the basis of this action. On the next day defendant presented the two drafts which plaintiff

had given to the Harrison National Bank to the Live Stock Bank and received payment therefor, which funds were by defendant placed on deposit to the credit of the Harrison National Bank in its account with defendant. A year or more prior to the receipt of such last named item the Nebraska National Bank of Omaha had been organized, and in due course of business the Harrison National Bank had become indebted to it in the sum of $25,000, or over, and had secured such indebtedness by placing with such creditor as security collateral consisting of notes and mortgages of the value of at least $40,000. After making such $25,-000 loan and receiving the collateral, the Nebraska National Bank became insolvent, was taken charge of by the comptroller of the currency, and in the course of the liquidation of its assets, and about three months prior to the transactions here in question, the note evidencing this indebtedness of $25,000 together with the collateral securing the same, had been sold and delivered, by and through the orders of such comptroller, to the defendant, for a consideration that is unquestioned in this case. Shortly after receiving payment of the two drafts from the Live Stock Bank, the defendant offset the amount then on deposit in its bank to the credit of the Harrison National Bank, to wit, $20,952.51, by crediting the same on the note secured by such collateral (which note was then past due), and subsequently other amounts were so collected and credited by defendant. These transactions were reported to the receiver of the Harrison National Bank, which reports, under the direction of the comptroller of the currency, were in all things approved. On June 28, 1924, the receiver of the Harrison National Bank, in furtherance of the liquidation of its assets, entered into a contract of sale, under the direction of the comptroller, with the Sioux Bank, whereby this collateral was sold and afterwards by the receiver turned over to it for a valuable consideration, and later, as provided in such contract of sale, there was paid to defendant by the Sioux Bank the balance due on the $25,000 note of the Harrison National Bank. A fur-

ther and detailed report of the acts of the defendant in offsetting the deposit of the Harrison National Bank against indebtedness owing by the latter to the former was made by defendant to the receiver on August 16, 1924.

The record is without evidence showing notice of plaintiff's claim to any one connected with this suit (save that the drafts were presented to defendant for payment by the Live Stock Bank on February 4, 1924, as heretofore stated) or that plaintiff held or claimed to hold an equitable lien as against the defendant, or any property held by it belonging to the Harrison National Bank or the trust growing out of its insolvency, until the commencement of this action in October, 1924. Further, there is no evidence showing, or tending to show, an agreement, either verbal or written, between the plaintiff and the Harrison National Bank, or between them or either thereof with this defendant, changing any of the deposits in question from a general to a special deposit, as between the depositor and the depository bank. Neither is there any evidence showing notice to either of the depository banks of the claimed custom existing between plaintiff and the Harrison National Bank in their mode of clearance of each day's business, or the claimed relation of such transactions to the respective deposits on which checks and drafts were drawn.

From the foregoing facts, we conclude as follows:

That the deposit in defendant bank, as also that in the Live Stock Bank, was general in its nature, and, as between the parties hereto, it simply created a status of debtor and creditor between the depositor and the depository bank. *State v. Farmers & Merchants Bank,* 114 Neb. 378.

That it was 'defendant's duty to refuse payment of the drafts drawn on it by the Harrison National Bank in favor of J. L. Gerlach, cashier; a breach of which duty would have rendered it liable for damages.

That the defendant was acting within its legal rights when it offset the indebtedness held by it against the Harrison National Bank by the deposit of such latter bank. "The rule may be broadly stated, that the bank has a gen-

eral lien on all moneys and funds of a depositor in its possession for the balance of the general account." Morse, Banks and Banking (5th ed.) sec. 324; *State v. Farmers & Merchants Bank,* 114 Neb. 378; *First Nat. Bank of Chicago v. Selden,* 120 Fed. 212; *New York County Nat. Bank v. Massey,* 192 U. S. 138. This same rule applies even where the note evidencing the indebtedness is secured by collateral, as in the instant case. *Livingstain v. Columbian Banking & Trust Co.,* 77 S. Car. 305; *Cockrill v. Joyce,* 62 Ark. 216.

That the issuance and delivery of the drafts in question was not an assignment *pro tanto* of the funds drawn against, and did not give rise to a cause of action, either at law or in equity, in favor of the payee named therein as against the bank on which they were drawn, unless and until such drafts were accepted or certified to by the drawee bank, neither of which took place in this case. Comp. St. 1922, sec. 4799; *Superior Nat. Bank v. National Bank of Commerce,* 99 Neb. 833; *Gasper v. Security State Bank,* 109 Neb. 495. The same rule is controlling in the federal courts. "A check holder, as such, cannot maintain either an action at law or a suit in equity against the bank on which the check is drawn; the check being held, as between maker and payee, not to be an assignment *pro tanto,* even in equity, of the indebtedness owing by the bank upon which the check had been drawn." *First Nat. Bank of Chicago v. Selden,* 120 Fed. 212. This statement is supported by *Laclede Bank v. Schuler,* 120 U. S. 511, and *Fourth Street Bank v. Yardley,* 165 U. S. 634.

That the claimed custom, if any such existed, was one special in its nature, of which the depository bank was without notice. Hence, defendant was not bound by reason of such claimed custom. *First Nat. Bank of Hastings v. Farmers & Merchants Bank,* 56 Neb. 149; *Bixby v. Bruce,* 69 Neb. 78.

That one claiming under an exception to a general rule carries the burden of alleging and proving facts which

would bring him within such exception. This burden certainly has not been met by the record before us.

The facts in the instant case are plainly distinguishable from those under consideration in *Gruenther v. Bank of Monroe*, 90 Neb. 280, and *Soppe v. Mechaley*, 103 Neb. 264.

As the record in this case is without substance which would make it an exception to the general rules hereinbefore announced, and as we have found that the plaintiff's claim of lien, under the record, is without basis in contract, in duty imposed, or in equity, it necessarily follows that the judgment of the trial court is right, and it is,

AFFIRMED.