## Brookville National Bank & Trust Co., Guardian, v. Rowland, Receiver, et al.

*Conrad & Conrad*, for plaintiff.

*Thomas G. Gregory* and *Raymond E. Brown*, for defendants.

LONG, P. J., July 2, 1936.—Plaintiff in this case comes before the court with a bill of complaint alleging the following facts:

1. That The Jefferson County National Bank, of Brookville, Pa., is a corporation organized and existing under the laws of the United States of America, with its principal office at Brookville, Jefferson County, Pa.;

2. That The Jefferson County National Bank was taken over by the Comptroller of the Currency on November 9, 1933, and is now in possession of the Comptroller of the Currency of the United States, and that Robert L. Rowland is receiver for said bank;

3. That on November 9, 1933, at the time the Comptroller of the Currency took possession of the aforesaid bank, it was guardian and trustee of the following estates: Guardian of the estate of Daniel T. Balmer, a feeble-minded person; guardian of the estate of John Lewis Craven, a minor; trustee of the Paul Darling Poor Fund; trustee for the Richardsville Cemetery Association, and trustee re Joseph Francis and Mary Wanner;

4. That Brookville Bank & Trust Company, plaintiff, a corporation, with its principal office in Brookville, Jefferson County, Pa., has been substituted as fiduciary for the aforesaid estates;

5. That whatever cash balances belonged to the aforesaid estates were carried in the commercial department of said bank, and that the balances so carried are secured by securities of the bank, which securities are also pledged as security for certain deposits of Jefferson County, Pa.;

6. That, in addition thereto, said securities were also deposited as security for trust balances of other estates, and, if the same were sold, the proceeds would not be sufficient to pay the various balances now on hand in possession of the receiver of the said The Jefferson County National Bank;

7. That the said The Jefferson County National Bank, since it was taken over by the Comptroller of the Currency, has filed accounts in all of the trust estates hereinbefore mentioned except in the estates of Joseph Francis and Mary Wanner, which accounts show cash balances in the commercial department of said bank.

The bill of complaint then sets forth that the receiver has not sold the securities, or any of them, and prays the court (1) that the receiver be required to state an account of all the securities held by the bank to secure fiduciary

funds in the commercial department of the bank, together with the names of the estates or persons which or who may claim to be beneficiaries thereof, together with the amounts of their claims; (2) that said securities be sold under the direction of this court; (3) that the rights of all parties claiming a distributive share in the proceeds of said securities after their liquidation be determined upon distribution; and (4) for further relief.

The receiver of The Jefferson County National Bank, after having entered a general appearance on January 14, 1936, in compliance with Supreme Court Equity Rule 29 and the Act of March 5, 1925, P. L. 23, presented a petition to the court raising questions of jurisdiction, whereupon plaintiff waived issuance of the rule, accepted service thereof and filed an answer denying the allegation of defendants that the court had no jurisdiction.

Therefore, the sole question under the pleadings is: Does this court have jurisdiction of the cause of action set forth in the bill of complaint? If so, by what authority?

As was well said by the Supreme Court of Pennsylvania, in In re Mains' Estate, 322 Pa. 243, a careful reading of this bill discloses that plaintiff seeks a discovery, an accounting, a declaration of the rights of all trustee's accounts in the bank and a determination of many and, no doubt, varied facts, with the added direction to the receiver to sell and convert securities into cash, which would compel this court to search in vain for any grant of such powers.

The bank is in receivership and under the custody and control of the Comptroller of the Currency of the United States of America. The Comptroller of the Currency has been given wide general powers with respect to National banking associations, as will be found in the following Acts of Congress: Act of December 23, 1913, 38 Stat. at L. 261, sec. 10, 12 U. S. C. §1, covering the Bureau of Comptroller of the Currency; Act of June 30, 1876, 19 Stat. at L. 63, sec. 1, 12 U. S. C. §191, covering grounds

for the appointment of a receiver; Revised Statutes, §§5235 and 5236, 12 U. S. C. §§193, 194, covering dividends on adjusted claims and distribution of assets.

The Act of May 15, 1916, 39 Stat. at L. 121, 12 U. S. C. §192, provides:

"Such receiver, under the direction of the comptroller, shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders. Such receiver shall pay over all money so made to the Treasurer of the United States, subject to the order of the comptroller, and also make report to the comptroller of all his acts and proceedings."

The Act of December 23, 1913, 38 Stat. at L. 261, 12 U. S. C. §248, subsec. (k), provides, among other things, that National banks are authorized to act as trustees and guardians of estates, and that they

"Shall segregate all assets held in any fiduciary capacity from the general assets of the bank and shall keep a separate set of books and records showing in proper detail all transactions engaged in under authority of this subsection. . . .

"No National bank shall receive in its trust department deposits of current funds subject to check or the deposit of checks, drafts, bills of exchange, or other items for collection or exchange purposes. . . .

"In the event of the failure of such bank the owners of the funds held in trust for investment shall have a lien on the bonds or other securities so set apart in addition to their claim against the estate of the bank."

Revised Statutes §5236, 12 U. S. C. §194, provides, among other things, that:

"From time to time, after full provision has been first made for refunding to the United States any deficiency in redeeming the notes of such association, the comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and, as the proceeds of the assets of such association are paid over to him, shall make further dividends on all claims previously proved or adjudicated".

We shall first look at the duties of the receiver in the instant case, as prescribed by Congress. First, he is compelled to collect all the assets of the bank and convert them into money, with the approval of a court having jurisdiction over him, and pay the proceeds to the Treasurer of the United States; second, he is to pay such money out in dividends to such creditors as may have established their claims against the bank, either before the receiver or in any court with jurisdiction over the bank.

In the instant case the plaintiff is asking this court to require the receiver to state an account of all securities held by the bank to secure fiduciary funds in the commercial department of said bank, and then to direct the receiver to sell said securities, and, after the sale thereof, to determine the rights of the parties claiming distributive shares therein. What law authorizes this court to assume jurisdiction over the receiver of a National bank for such purposes? This is not a case where the plaintiffs ask this court to determine the amount of a claim against an insolvent bank and ascertain whether it is a general, secured or preferred claim to be paid subject to the rules governing receiverships of National banks. It goes beyond that, and asks this court to do that which the act of Congress has specifically delegated to the Comptroller of the Currency of the United States of America.

For the purpose of attempting to clarify the situation, we will refer to some of the numerous decisions of the United States courts covering the rights and duties gov-

erning the Comptroller of the United States in the disposition of the assets of an insolvent bank which has been placed in receivership by him.

In Earle v. Pennsylvania, 178 U. S. 449, the Pennsylvania State court, among other things, decreed a specific lien on property in the hands of the receiver of a National bank, which decree the United States Supreme Court set aside, and, in so doing, said:

"We must not, however, be understood as holding that the distribution of the bank's assets in the hands of the receiver could have been in anywise directly controlled by the State court or seized under an attachment or execution in the hands of any State officer. On the contrary, the direction in the statute that the receiver pay over all moneys realized by him from the assets of the bank to the Treasurer of the United States, subject to the order of the Comptroller, furnished a rule of conduct for him which neither an order of nor any proceedings in the State court could affect, modify or change."

In the case of First National Bank of Chicago v. Selden, 120 Fed. 212, it was held:

"When a National bank has been placed in the hands of a receiver as insolvent, the federal law becomes from that moment the law of the distribution of its assets to the exclusion of the law of any state".

In Steele, County Treasurer, v. Randall et al., 19 F. (2d) 40, it was held:

"Receiver appointed for National bank . . . is not in any sense such an official as receiver appointed by court of equity, but is an administrative officer selected by Comptroller, and is an 'agent or officer of the United States.' "

In that case it was further held that National banks are Federal instrumentalities, that the Revised Statutes of the United States provide the method and machinery to wind up the affairs of insolvent National banks and have stated the rights of creditors in such distribution, and that the Revised Statutes, §5236, require

a "ratable" distribution among creditors who have properly established their claims. In that case it was also held that the reason why liens cannot be established against property in administration by such a "receiver" has nothing to do with the reasons which produce the same result as to property being administered by an equity administrator. The reason as to the former is that such liens would, obviously, prevent the "ratable" distribution required by the statute. Here, the court held,

"The act of Congress prescribes the conditions upon which National banks shall be created; the powers they shall possess; and the consequences of their failure to meet their obligations. All persons dealing with these institutions can only acquire and enforce rights against them under the limitations there designated."

In Lehman, Sheriff, et al. v. Spurway, 58 F. (2d) 227, the Circuit Court of Appeals for the Fifth Circuit held that:

"The receiver of a National bank is not an officer of court, but is the representative of the Comptroller and under his control . . . Although the district court may be called on to authorize sales and settlements, the assets of the bank are not in the court for administration, thereby drawing to it all disputes over the title to and liens upon them and entitling the court to defend its possession as if they were in the hands of its own receiver. Jurisdiction as a Federal court . . . can be rested upon no such basis."

In Port Newark National Bank of Newark et al. v. Waldron, 46 F. (2d) 296, the Comptroller of the Currency took possession of the bank and appointed a receiver on August 7th. Immediately thereafter, the court, on a petition by stockholders alleging insolvency and praying for an injunction, appointed a receiver, which receiver took possession of the bank's assets, whereupon the appellate court said, among other things, that:

"It thus appears that Congress has provided a symmetrical and complete scheme for the banks to be organized under the provisions of the statute . . .

"The Comptroller of the Currency is charged with the duty of supervising National banks. When he deems it necessary to take possession of the assets of a bank and assume control of its operations, he appoints a receiver under Revised Statutes.

"The receiver acts under the control of the comptroller of the currency, and the moneys collected by him are paid over to the comptroller, who disburses them to the creditors of the insolvent bank."

It also held that:

". . . the appointment of receivers by the Comptroller is part of a complete Federal system looking to the control of National banks, and that such receivers . . . are officers of the United States, and their possession . . . is the possession of the United States."

From this it will be seen that the court has no right to direct how the moneys collected by the receiver shall be paid, for the reason that Congress has directed that he is under the control of the comptroller, who has the sole power to make disbursements.

In Hulse et al. v. Argetsinger et al., 18 F. (2d) 944, Judge Hand held:

"The receiver of a National bank appointed by the comptroller is his officer, not an officer of the court, nor are its assets while in his hands in custodia legis. . . . they do not become such by an order confirming a composition of debts made by him. Such an order is merely a condition upon the receiver's power to compound the debt; it is not made in any suit, nor does it adjudicate any rights inter partes."

In that case Judge Hand further held that a receiver of a National bank, in proceeding under the Revised Statutes, §5234, for compounding liability of directors, is not subject to the court's supervision, except as prescribed by the statute, and, although he must have the court's consent to compound debts or sell assets, that is merely a condition upon powers which are otherwise like those of the bank itself, and after getting leave to compound he may do as he wills.

We now come to the case of Barons v. First National Bank of Plainville, Kansas, 28 F. (2d) 615, which was an action in a State court against an insolvent National bank to obtain a reconveyance of real estate to plaintiff, and the United States court held that 12 U. S. C. §194 does not give any court coördinate jurisdiction in the matter of the collection of assets of the bank and deciding the rights of the receiver to property in his possession, and that, where the object of the suit is to take property out of the receiver's possession, that can only be accomplished in ordinary proceedings to reclaim property in the court having jurisdiction over the receiver.

It will be thus observed that the Federal courts have not authorized State courts to assume jurisdiction over the subject matter now before this court. We may then inquire what our Pennsylvania appellate courts have held concerning similar questions.

In Pestcoe v. Sixth National Bank of Phila. et al., 112 Pa. Superior Ct. 373, that court, in a well-written opinion by President Judge Keller, held, among other things, that the State court had no jurisdiction to declare preferences as respects the money of a National banking association in the hands of a receiver or conservator. Upon receivership of a National banking association, the Federal law becomes the law of the distribution of the assets. Again, in Hober's Estate, 118 Pa. Superior Ct. 209, in another well-written opinion, the Superior Court held that the State court had no jurisdiction over the subject matter. Jurisdiction of the cause of action, within the meaning of the Act of March 5, 1925, P. L. 23, relates solely to the competency of the particular court to determine controversies of the general class to which the case then presented for its consideration belongs: Welser v. Ealer, 317 Pa. 182; Nagle v. Nagle et al., Execrs., 311 Pa. 187. The only question which can be raised under the pleadings in construing the Act of March 5, 1925, P. L. 23, in the instant case, is whether this court has jurisdiction of the cause of action for which the bill of complaint is brought: Koontz v. Messer et al., 314 Pa. 434.

While we might go to great length in discussing the rights, liabilities and duties of a receiver of a National bank, we deem it useless, believing that we have no jurisdiction over the cause of action or the subject matter alleged in the bill of complaint. Therefore, from the facts and law involved in the proceedings now before the court, we conclude that the defendant receiver must answer directly to the Comptroller of the Currency of the United States; consequently, this court does not have jurisdiction of the cause of action and the subject matter set forth in the bill of complaint. We therefore make the following

### Order

And now, July 2, 1936, it appearing that the court is without jurisdiction in the premises, the prayers of the plaintiff are refused, the rule to show cause is made absolute, and the bill of complaint is dismissed.