LESTER M. ANDREWS ET AL., APPELLANTS, V. HATTIE V.
DEHNER ET AL., APPELLEES.

24 N. W. 2d 649

FILED OCTOBER 25, 1946. No. 32079.

*Frank L. Burbridge,* for appellants.

*Joseph H. McGroarty,* for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEA-
GER, CHAPPELL, and WENKE, JJ., and POLLOCK, District
Judge.

SIMMONS, C. J.

In this action plaintiffs Andrews and Watts sued the de-
fendant to recover a commission in the amount of $1,050
for the sale of real estate. Mrs. Dehner, the owner of the
property, did not contest the action and paid the amount
claimed into court. The Byron Reed Company, a corpora-
tion, filed a petition in intervention, alleging that it was the
agent for Mrs. Dehner in the sale of the property; that
plaintiffs solicited its aid and cooperation in consummating
the sale; that plaintiffs orally agreed that it should receive
one-half of the commission; that it performed services of
value and represented Mrs. Dehner; that according to the
contract and according to the usage and custom of real-
estate agents, it was entitled to one-half of the commission;
that in the action of Izzie Garsick v. Hattie V. Dehner, 145
Neb. 73, 15 N. W. 2d 235, plaintiff Andrews and his partner
Hultman testified that it acted with the plaintiffs in nego-

tiating the sale, that it was entitled to its share of the commission, that by reason of the testimony a decree of specific performance was entered, that plaintiffs were estopped to deny that it was entitled to one-half the commission; and prayed for an adjudication of rights and that it be awarded one-half of the commission.

Plaintiffs answered, denying generally, and prayed for a dismissal of the petition in intervention.

Thereafter the matter went to trial as an action in equity between the plaintiffs and the Byron Reed Company to determine whether or not the Byron Reed Company was entitled to one-half the commission. The trial court found generally for the Byron Reed Company, and ordered the $525 paid to it. Plaintiffs appeal. We affirm the decree of the trial court.

For convenience the Byron Reed Company will be referred to hereinafter as the defendant.

The two plaintiffs together with one Howard Hultman were associated in the real-estate business under the name of City Loan Realty Company. The exact relationship is not disclosed, except that the three men were doing business under an understanding that all commissions earned, on any business produced by any of them, would be divided equally. All three had something to do with this transaction at different times and in effect worked together on it.

Garsick contacted plaintiff Watts and executed a proposed contract of purchase of the property for $20,000, with a $5,000 cash payment. The three associates conferred, and knowing that defendant was Mrs. Dehner's representative in renting the property, decided to ask defendant to submit the proposition to her. They submitted the proposal to defendant, and it in turn submitted the proposal to Mrs. Dehner. She rejected it. A conference then was held by Garsick and one of the associates with defendant's representatives, resulting in a suggestion that the price to be paid be increased and all cash above a mortgage be paid. Garsick's second proposal did not include all cash.

It appears that the property, an apartment house, had ten apartments containing nine gas ranges and nine refrigerators. Mr. Garsick wanted a contract calling for ten of each. Defendant insisted that only nine of each should be included in the contract.

The defendant then submitted to plaintiffs a proposed contract calling for the sale at $21,000, to be paid all cash, subject to the mortgage, and including nine gas stoves and nine electric refrigerators. Garsick refused to sign the contract because of the reduced number of appliances. Plaintiffs then prepared another contract substantially as proposed by defendant, but increasing the number of appliances to ten. Defendant refused to submit that contract to Mrs. Dehner and the plaintiffs' evidence is that defendant threw it back at them. Apparently Garsick then refused to deal further with defendant and instructed plaintiffs to deal with Mrs. Dehner direct. That they did. Mrs. Dehner came to their office and signed the contract, and thereafter notified defendant of the contract. Two controversies immediately arose. Defendant accused plaintiffs of improper conduct in going around them and to Mrs. Dehner direct. Mrs. Dehner refused to go ahead with the contract. Plaintiff Andrews and Hultman then went to defendant's officer, gave him a copy of the contract, told of their difficulty with Mrs. Dehner, and asked him to "Take over and close it." Defendant tried unsuccessfully to persuade Mrs. Dehner to proceed with the contract. At the trial of the specific performance action, defendant's officers testified as to the transaction as witnesses for Mrs. Dehner. It is not claimed that their testimony was false or harmful to the cause of Garsick.

It appears that sometime after the events recited, Hultman left the association and in a settlement between him and plaintiff Andrews, Hultman was given credit on a note for $333.33 for commissions due on this sale. It is obvious that any settlement between the associates could not affect the rights of defendant.

It is the contention of the plaintiffs here that defendant did not participate in this sale, but rather withdrew from it and finally resisted the sale by testifying for Mrs. Dehner. We see no merit in this contention. Clearly, they refused to recommend a contract to Mrs. Dehner that called for the sale of more appliances than she had in the apartments. That plaintiffs considered that defendant had not withdrawn is definitely established by their calling upon defendant to take over and close the deal when Mrs. Dehner first showed an unwillingness to complete the transaction.

Plaintiffs next argue that there was no agreement to divide commissions and that in the absence of one, the defendant cannot prevail. But defendant pleaded not only an agreement, but the usage and custom of real-estate agents.

Neither party offered an impartial expert. Both testified as to the custom. Defendant's officers testified that the established custom in Omaha was an equal division of the commission where one real-estate broker represents the purchaser and one real-estate broker represents the seller. Plaintiff Andrews testified that where one of the brokers had a written listing of the property for sale the custom was to divide the commission, but that in the absence of a listing, an agreement must be reached. Plaintiff Watts testified likewise, and also that "I don't believe it is the custom of any dealer to try to cut through anybody if they had their cooperation in assisting to complete a deal."

It is clear that there was no express agreement as to the division of the commission, and also that neither of the parties had this property listed for sale.

Does the custom require a division of the commission only where one or the other party has a listing of the property? We think plaintiffs have answered the question. Plaintiffs testified that before they contacted defendant they discussed the matter and agreed that if they were to close the deal through defendant, they would have to share the commission with it. They further testified that had

Mrs. Dehner accepted the proposal submitted through defendant, they would have expected to divide the commission with defendant. In the absence of an agreement that sharing could have rested only on the custom in the business. We conclude then that plaintiffs understood the custom to be, and that it was, as testified to by defendant's witnesses. Plaintiffs' reason for objecting to sharing the commission appears to be that defendant did not cooperate in the trial. The evidence is that defendant undertook to persuade Mrs. Dehner to complete the transaction up to the date of the trial. Testifying to the transaction should not result in forfeiting the right defendant had to share in the commission, if any.

We have here this factual situation. Plaintiffs sought the assistance of the defendant in effecting this purchase, intending and expecting when they did it that defendant should receive compensation from them if the sale was effected. They testify that had the first proposal of sale been accepted, they would have split the commission. Defendant undertook to assist, intending and expecting to receive compensation from plaintiffs if the sale was effected, although nothing was agreed to about a division of the commission. We think this constituted an implied contract to pay in the event the purchase was completed and the commission earned. That the commission was earned cannot be questioned, inasmuch as Mrs. Dehner has paid it. Defendant furnished the assistance asked and continued to do so after the first proposal was rejected and the final contract executed. Plaintiffs received all the assistance that they were willing to accept. Defendant has performed.

The question is the amount to be paid. Admittedly there was no agreement as to the amount of the payment to be made defendant. Defendant has proved the custom. We think it sufficient.

The rule is this, as we gather it from the texts and the cases: Where a contract exists regarding a subject matter, but is silent in its terms in one particular element, and

where there exists a local custom known or which reasonably should be known to the parties, and where the custom is not unreasonable nor repugnant to the terms of the contract nor contrary to law or public policy, it is presumed that the parties contracted with a view to such custom, and the custom enters into and becomes a part of the contract. 17 C. J., Customs and Usages, § 64, p. 502; 25 C. J. S., Customs and Usages, § 20, p. 108; 27 R. C. L., Usages and Customs, § 10, p. 162; Decennial Digest, Customs and Usages, Key No. 10; O'Gara Coal Co. v. Chicago, M. & St. P. Ry. Co., 114 Neb. 584, 208 N. W. 742; Harrison State Bank v. First National Bank, 116 Neb. 456, 218 N. W. 92; Shambaugh v. City Bank of Elm Creek, 118 Neb. 817, 226 N. W. 460; State ex rel. Sorensen v. Nebraska State Bank, 120 Neb. 539, 234 N. W. 82; James Poultry Co. v. City of Nebraska City, 135 Neb. 787, 284 N. W. 273; Runner v. Pierson, 144 Neb. 847, 14 N. W. 2d 847. The case of Maddox-Grundy Co. v. Helm, 238 Ky. 273, 37 S. W. 2d 49, is in material respects directly in point.

Tested by the above rule, the defendant should prevail. The decree of the district court is affirmed.

AFFIRMED.