Phillips, Adm'r, *versus* The Allegheny Valley Railroad Co.

1. While as to the claims of distributees and legatees upon the estate of a decedent the jurisdiction of the Orphans' Court is exclusive, as to creditors the right to proceed by a common law action for the determination of their claims is concurrent with the right to proceed in the Orphans' Court. But in order to obtain any part of the fund in the hands of the executor or administrator, creditors must proceed in the Orphans' Court, which alone has the power to distribute the estate.

2. A., a creditor, first brought an action in the Common Pleas against B., C.'s administrator, for a claim against C.'s estate. Before the trial of the cause B. filed his account as administrator in Orphans' Court, and thereupon A. presented his claim before the auditing judge. After contest, the Orphans' Court entered a decree fixing the amount due A. and awarding to him a dividend of the estate in B.'s hands. From this source A. realized but part of his claim and therefore proceeded with his common law action. At the trial, he offered in evidence the record of the Orphans' Court, as proof of his claim. Ojected to.

*Held* that the decree was admissible as prima facie evidence of the debt in suit.

3. After the admission of the decree in evidence, the defendant gave no evidence.

*Held* that the court below properly directed the jury to find a verdict for the plaintiff, for the amount designated in the decree of the Orphans' Court.

October 29th, 1884.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No. 1, of *Allegheny county:* Of October and November Term, 1884, No. 75.

Assumpsit, by the Allegheny Valley Railroad Company against R. B. Phillips, administrator of the estate of William Phillips, deceased, to recover a balance alleged to be due to the plaintiff by the decedent, who was former president of the company. Plea, the general issue.

On the trial, before STOWE, P. J., the following facts appeared: William Phillips was president of the plaintiff com-

11 OUTERBRIDGE.—30

pany from 1865 until his death, in April, 1874. In December 1874 the Auditor of the company made a report showing the accounts between the company and William Phillips, during the period of the latter's presidency, from which there appeared a balance due the company of $357,527.40.

On December 20th, 1875, the company brought this suit against William Phillips's administrator, for said balance ; filing as their statement of account the above report of the Auditor. Before the cause came to trial R. B. Phillips filed his account in the Orphans' Court, as administrator of William Phillips, and the company presented their claim before the judge who audited said account. In pursuance of this proceeding, after a contest which extended over several weeks, the Orphans' Court entered a decree awarding the company a dividend of $3,004.41, from William Phillips's estate, on a debt stated in the decree to be $408,378.43.

Subsequently, when the present suit came to trial, the plaintiff company offered in evidence the record of the Orphans' Court showing the above decree. Objected to by defendant's counsel as incompetent and irrelevant, on the ground that the finding of the Orphans' Court was not binding upon the parties who would be affected by the judgment in this cause. Objection overruled and evidence admitted. Exception.

Both parties then rested, and defendant's counsel asked the court to charge that under the evidence the verdict should be for the defendant.

The court charged as follows: " Under the evidence in this cause the plaintiff is entitled to your verdict for the amount indicated by the decree of the Orphans' Court with interest up to the present time."

Verdict for plaintiff for $466,837.36 and judgment thereon ; whereupon the defendant took this writ assigning for error the admission of said Orphans' Court record in evidence and the charge of the court.

. *John Barton* (with whom were *George Shiras, Jr., C. C. Dickey* and *W. C. Erskine*) for plaintiff in error.—The issue framed by the pleadings in this suit was as to the right of the plaintiff below to recover from defendant a balance appearing to be due by the Auditor's report or bill of particulars. On the trial the company claimed to recover the amount of a judgment or decree of another court, and the court below not only admitted this decree in evidence, but held that it was conclusive between the parties. An action at law will not lie on a decree of the Orphans' Court: Eichelberger *v.* Smyser, 8 Watts 181. How then can such a decree be used

in evidence, thus accomplishing the same end indirectly. It was not the duty of the administrator specially to examine and defend every account presented for payment; and even if he had known that the claim proven was for more than was justly due, it is doubtful if he had the power to appeal from the decree : Mellon's Appeal, 8 Casey 121 ; Gallagher's Appeal, 8 Norris 30. The parties who will suffer by this judgment if it is allowed to stand are the heirs of William Phillips, who were not parties to, and could not be heard in the Orphans' Court proceedings. A judgment in Common Pleas in favor of a creditor would not conclude the Orphans' Court : McCreery's Appeal, Pitts. Leg. J., vol. 31, No. 23, p. 230. To affirm this judgment is to destroy the recognized right of the heirs to defend a scire facias to charge land with the debts of their ancestor.

*Dalzell* (with whom was *Hampton*) for defendant in error.— The Orphans' Court, found, after a strenuous defence by the administrator, that William Phillips was at his death indebted to the railroad company in a sum specified. The items entering into this decree were the same as those embraced in the bill of particulars in this action. The defendant did not object to the evidence offered because the plaintiff had not declared on any such claim, but " because the finding of the Orphans' Court was not binding upon the parties who would be affected by the judgment." But the parties were identical in both courts; the issue was the same, and the Orphans' Court was one of competent jurisdiction. The decree of the Orphans' Court was final—not appealed from. It could " be enforced by an action of debt or assumpsit in the common law courts. The record in the Orphans' Court is evidence of the debt, and conclusive of the subject matter of the decree. The party may have redress by action of debt or assumpsit, in which the decree is but inducement, or evidence of the debt : " Eichelberger v. Smyser, 8 Watts 183.

The court below did not rule that the decree offered was conclusive between the parties. It was not called upon to so rule. The defendant below offered no evidence, made no pretence of a defence, but contented himself with asking the court to say that the decree offered was not evidence.

Mr. Justice GREEN delivered the opinion of the court, January 5th, 1885.

There is no doubt that it was both the right and the duty of the defendant in error, as a creditor of William Phillips, deceased, to go into the Orphans' Court with their claim and prosecute it there in accordance with the methods provided

for that purpose. The jurisdiction of that court, and its exclusive character, in the determination of the claims of creditors as well as of distributees and legatees, has been so frequently and so emphatically affirmed by this court that it seems like a work of supererogation to even refer to the authorities. Yet as the effect of the proceeding by a creditor in the Orphans' Court, for the establishment and payment of his debt, is called in question in the present case, it seems to be necessary to give at least some attention to the subject. The case of Kittera's Estate, 5 Harris 416, was the case of a creditor, and it was held that under the Act of 13th April, 1840, the Orphans' Court was bound to entertain his petition, and had authority to make distribution among creditors, as well as all other persons entitled to the estate. We said : " Each creditor or claimant has a right to appear and to be heard so far as may be necessary for the protection of his own interest." And again : " The power to decide all questions necessary to a proper distribution of the fund follows the power of distribution, and rests in the Orphans' Court as a necessary incident to the jurisdiction." In Bull's Appeal, 12 Harr., LEWIS, C. J., on p. 288, quoting the foregoing language, said : " We do not see how distribution among, heirs or legatees can be decreed without previously ascertaining the amount of the debts. The power to do this necessarily follows the power of distribution." In Whiteside *v.* Whiteside, 8 Harris, on p. 474, BLACK, C. J., speaking of the Orphans' Court, said : " The exclusiveness of its jurisdiction and the conclusiveness of its decrees have been placed, by the Acts of Assembly and the decisions of this court, upon a foundation which cannot be shaken. If there be anything besides death which is not to be doubted it is that the Orphans' Court alone has authority to ascertain the amount of a decedent's property and order its distribution among those entitled to it." In this case it was held that a common law action would not lie to recover a distributive share before the settlement of the administration account. In Ashford *v.* Ewing, 1 Cas. 213, it was held that such an action would not lie even after the settlement and confirmation of the account ; in other words that the jurisdiction of the Orphans' Court was exclusive, and that of the Common Pleas taken away by the various Acts applicable to the subject. LEWIS, C. J., reviewing the foregoing and other authorities, said : " It was expressly decided in Kittera's Estate, 5 Harris 422, that the Orphans' Court is by statute clothed with authority to distribute the estates of decedents in the hands of executors or administrators 'among the persons entitled to the same ; ' and that by these general terms, as well as by express words, the legislature embraces creditors

as well as heirs, next of kin and legatees." The whole sub-
ject was again exhaustively reviewed by AGNEW, J., in
Dundas's Estate, 23 P. F. S. 474, in which he says: "The
exclusiveness of this jurisdiction is sustained by numerous
modern decisions," citing a number of cases and the Act of
13th April, 1840, and adding, "That Act authorized the
Orphans' Court to appoint Auditors on the application of the
creditors, as well as of executors and administrators, and on
the application of legatees, heirs or other persons interested,
to make distribution of the estate in the hands of executors
and administrators, to and among the persons entitled to the
same." Again he says: "THOMPSON, J., repeats the remark
of WOODWARD, J., in Shollenberger's Appeal, supra, that the
jurisdiction of the Orphans' Court, 'within its appointed
orbit, is exclusive, and therefore necessarily as co-extensive
as the demands of justice.' It is very clear, therefore, that
the Orphans' Court, in a proceeding to distribute an estate
among legatees, next of kin and heirs, has ample power to
inquire into and determine all questions standing directly in
the way of a distribution to these parties."

In Hammett's Appeal, 2 Norr. 392, AGNEW, C. J., said:
"The exclusive jurisdiction of the Orphans' Court to ascer-
tain the amount of the estates of decedents, and order their
distribution among those entitled, creditors as well as legatees
and distributees, is so fully settled that nothing but future
legislation can alter the law." . . . . "The creditors being
thus bound to appear and claim their respective debts before
the Auditors appointed to settle and adjust their claims, a
legislative protection of their rights will be found in the pro-
visions contained in the 20th section of the Act of 1832."
. . . . . "Outside of decided cases, when we examine the
subject in the light of reason and necessity, the distribu-
tion of a decedent's estate among all entitled to it must be-
long to the Orphans' Court. It has possession of the fund,
for it controls and directs all those who have its custody, and
it is only through its decrees the fund can be reached. It is
true the remedy of the creditor to establish his debt in a com-
mon law court is not taken away, for this may be necessary to
stop the running of the Statute of Limitations, to decide dis-
puted and complicated questions, and make the settlement
afterwards before the Auditors more easy and convenient.
But this does not, ipso facto, bring the pursuing creditor on
the fund in the Orphans' Court." . . . . . "The creditor who
desires to share in the fund in the hands of an executor or
administrator must present his claim before the Auditors, and
when there it is subject to attack and he must establish it. If
he have already established it in a court of law it is so much

the better, but if not, under the decisions heretofore cited he must support his right to share in the fund before the Auditors, by proving it." . . . . . " Our conclusion does not affect the prerogative of other courts, but only the rights of the creditors. They may, if they choose, persist in a common law suit to the end to reach real estate or some other fund, but if they fail to come in on a fund in due course of distribution in the Orphans' Court, after notice of the proceeding there, they may lose their grasp upon a fund which that court alone has jurisdiction to distribute among the creditors."

The result of the authorities seems to be that as to the claims of distributees and legatees the jurisdiction of the Orphans' Court is exclusive and that of the Common Pleas is ousted, while as to creditors, the right to proceed by a common law action for the determination of their claims is concurrent with the right to proceed in the Orphans' Court. But in order to obtain any part of the fund in the hands of the executor or administrator they must proceed in the Orphans' Court which alone has the power to distribute the estate.

In the case now under consideration, the creditor first brought an action, the pending one, in the Common Pleas. Before the trial of the case the administrator of William Phillips, the deceased debtor, filed his account in the Orphans' Court, and thereupon the defendant in error presented its claim before the Auditing Judge of that court and it was there contested in a litigation which extended over several weeks and resulted in a decree fixing its amount and ascertaining the share of the estate in the hands of the administrator to which it was entitled. As the dividend received was only a small part of the debt, the common law action is proceeded with for the purpose, doubtless, of following the real estate, and on the trial the record of the Orphans' Court was offered in evidence as proof of the debt claimed. The record was objected to and its admission constitutes the only practical error assigned in the cause. Nothing more was decided by its admission than that the decree of the Orphans' Court was *prima facie* evidence of the debt in suit. The administrator was not denied the right of making defence against the decree. He made no defence, and thereupon the court below directed the jury to find a verdict for the plaintiff for the amount of the decree made by the Orphans' Court. This direction was plainly necessary and proper if the decree of the Orphans' Court was *prima facie* evidence of the debt, and that is the full scope of the question presented for our decision. It is difficult to understand why it was not at least *prima facie* evidence in support of the plaintiff's

claim.   It was the decree of a court of competent jurisdiction, having full authority to hear and to determine, whether the plaintiff had a lawful claim against the estate of the decedent and to adjudge its amount.   All opposing claimants to the fund had the right to appear and contest the claim, and in point of fact it was contested in a protracted litigation of such a character, as, it is probably safe to say, no jury of twelve men could ever have intelligently determined.  The next of kin of the decedent had a right to be heard in opposition to the claim.   The administrator being the custodian of the fund, was necessarily notified of the claim, and while he might have no right of appeal from the final decree of distribution, it is too much to say that he had no right to object to the claim and present any defence of which he had knowledge.   But however that may be, all the parties who were interested in the fund had a right of appeal, but no appeal was taken and the decree therefore became the final judgment of a court possessed of full power and authority to make it as against all the world.   To say that such a decree, thus made and perfected, has no force whatever in an action against the personal representative of the decedent debtor, is to go far beyond any authorities to which we are referred, and to antagonize the spirit and meaning of the decisions we have quoted.   Moreover, it would seem to be quite in hostility with the following language of Mr. Justice THOMPSON, in the case of Sergeant's Heirs *v.* Ewing, 12 Cas. 156, which was a *scire facias* against the heirs on a judgment against the executors, and the question was whether the judgment against the executors was evidence against the heirs.   It was determined in the court below that it was *prima facie* evidence, and Justice THOMPSON said:—" To have determined the point in any other way would certainly have been a great surprise upon the profession in Pennsylvania, if not something worse.   Ordinarily, one personal action is conclusive between the parties to it, and nothing but a just sense of the danger to parties interested, as heirs or devisees in the real estate of a decedent, ever superinduced the relaxation of the rule in any degree—but to hold that a creditor, who has after a severe and prolonged contest, established his right to satisfaction out of the personal assets, but finds in the end that they are insufficient for the purpose, and that he must enter *de novo* into the same contest with the heirs—must produce anew his proofs and witnesses, perhaps scattered and lost sight of under the expectation that they would never be needed again, is something in practice which has not been thought necessary for the last twenty years at least."   It seems unnecessary to pursue the subject further.   Of course

[Phillips et al. *v.* Railroad Co.]

we do not decide that the heirs or devisees may not be heard in defence against the decree of the Orphans' Court when called upon by *scire facias.* We do not even decide that the personal representative may not be so heard because that question is not before us, but we are very clear that in the common law action against the representative, the decree of the Orphans' Court, establishing the creditor's claim and fixing its amount, may be given in evidence in support of the claim, and if no defence is made against it, a verdict and judgment may be entered in accordance with its terms.

Judgment affirmed.