Pestcoe, Appellant, v. Sixth National Bank of
Philadelphia et al.

374

Argued October 18, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Maxwell Pestcoe,* for appellant.—The power of Congress is not enlarged by an emergency: Ex Parte Milligan, 4 Wall. 2; U. S. v. Cohen Grocery Co., 255 U. S. 81; Standard C. & M. Corp. v. Waugh C. Corp., 231 N. Y. 51.

The Act of Congress constituted an unauthorized delegation of legislative power: Knickerbocker Ice Co. v. Stewart, 253 U. S. 149; Bank of Minden v. Clement, 256 U. S. 126.

*Edwin S. Heins,* and with him *I. Smith Raspin,* for appellees.—A legislature can validate unauthorized acts, when it has an antecedent power to authorize them: Grim v. Weissenberg School Dist., 57 Pa. 433; Hewitt's Appeal, 88 Pa. 55.

Opinion by Keller, J., March 3, 1934:

This action in assumpsit was brought by the appellant against the Sixth National Bank of Philadelphia, a national banking association, and its conservator duly appointed by the Comptroller of the Currency of the United States, to secure a preference for a savings fund deposit which he had made in said bank and attempted to withdraw after thirty days' notice of withdrawal. He appeals from the order of the court below refusing judgment for want of a sufficient affidavit of defense.

The facts appearing from the pleadings may be summarized as follows:

Plaintiff was, a depositor in a savings fund account in defendant bank. Under the bank's rules he was required to give thirty days' notice of withdrawal before he could obtain the money. On January 30, 1933 he gave written notice to the bank of his desire to withdraw the whole of said account. The deposit, under said rules, was withdrawable on March 1, 1933. On that day he went to the bank, which was open for the receipt of deposits and demanded payment of his sav-

ings fund account, which was refused because the directors of the bank, with the approval of the Comptroller of the Currency, had, on February 28, 1933, restricted the payment of all deposits, including saving fund deposits, which were in said bank at the close of business on February 28, 1933; and that thereafter said defendant bank was open for business only as respects receiving new deposits and paying out the same. This action was taken pursuant to the authority given by Congress on February 25, 1933, (47 Stat., c. 126; U. S. Code Title 12, ch. 1, sec. 15-1—Mason's U. S. Code Annotated—12 U. S. C. A. sec. 1, Note—).[1] Subsequently pursuant to the authority given by Act of Congress of March 9, 1933, 48 Stat. c. 1, Tit. II, par. 203; U. S. Code, Title 12, sec. 203,[2] a conservator of the bank was appointed, who, under the supervision of the Comptroller of the Currency, took control of

---

[1] Comptroller given powers possessed by State officials; expenses; termination.

With the approval of the Secretary of the Treasury, the Comptroller of the Currency shall have and may exercise to such extent as he deems advisable with respect to any national banking association any powers which the State officials having supervision of State banks, savings banks and/or trust companies in the State in which such national banking associations are located may have with respect to such State institutions under State laws now in force or hereafter enacted: Provided, That nothing herein shall be construed to permit the establishment of branches of either national or State member banks or allow consolidation of either national or State member banks not allowed by existing laws......

Nothing herein shall be construed to impair any power otherwise possessed by the Comptroller of the Currency, the Secretary of the Treasury or the Federal Reserve Board.

The powers herein conferred shall terminate six months from its approval by the President; but the President of the United States may extend its force by proclamation for an additional six months. [Extended for six months more by proclamation dated August 18, 1933.]

[2] Appointment of conservator; duties and powers; expenses; salary.

Whenever he shall deem it necessary in order to conserve the assets of any bank for the benefit of the depositors and other creditors thereof, the Comptroller of the Currency may appoint a con-

the bank and was in charge at the time of bringing this action. In the meantime, on February 27, 1933, the General Assembly of this State passed a concurrent resolution authorizing the Secretary of Banking of the Commonwealth, under certain conditions, not to take possession of banking institutions under his supervision which were unable to pay deposits in full, but to permit them to remain open on a restricted basis, which was duly approved by the Governor the same day, (Resolution of February 27, 1933, No. 4, P. L. 1546);[3] and in confirmation of such action, the

servator for such bank and require of him such bond and security as the Comptroller of the Currency deems proper. The conservator, under the direction of the Comptroller, shall take possession of the books, records, and assets of every description of such bank, and take such action as may be necessary to conserve the assets of such bank pending further disposition of its business as provided by law. Such conservator shall have all the rights, powers, and privileges now possessed by or hereafter given receivers of insolvent national banks and shall be subject to the obligations and penalties not inconsistent with the provisions of this title, to which receivers are now or may hereafter become subject. During the time that such conservator remains in possession of such bank, the rights of all parties with respect thereto shall, subject to the other provisions of this title be the same as if a receiver had been appointed therefor. All expenses of any such conservatorship shall be paid out of the assets of such bank and shall be a lien thereon which shall be prior to any other lien provided by this act or otherwise. The conservator shall receive as salary an amount no greater than that paid to employes of the federal government for similar services.

In the Senate, February 27, 1933.

[3] Resolved (if the House of Representatives concur), That the Senate and House of Representatives of the Commonwealth of Pennsylvania in General Assembly met, hereby authorize and direct the Secretary of Banking not to take possession of any banking institution under the supervision of the Department of Banking of this Commonwealth because of the decision of such institution not to meet in full its liabilities for deposits made prior to the passage of this resolution, or prior to any future date fixed by such institution, if such institution shall have accepted such terms as the Secretary of Banking shall have imposed, which terms shall include the segregation of new deposits in a separate fund, available for withdrawal without limitation by the depositors making such deposits, and invested only in liquid assets.

Act of March 8, 1933, P. L. 9,[4] known as the Sordoni Act, was enacted, the preamble of which recognized the grave banking crisis, which had existed when the said resolution was passed and still existed at the passage of the act.

Further resolved, That the General Assembly hereby declares its purpose forthwith to enact suitable legislation more fully to effectuate this resolution and to relieve the Secretary of Banking from all liability for complying with this resolution.

Further resolved, That this resolution shall be effective immediately upon its approval by the Governor.

Approved—The 27th day of February, A.D. 1933, P. L. 1546.

[4] An Act relating to banks, trust companies, savings banks, and other banking institutions; providing for the protection of depositors therein, and empowering the Secretary of Banking to permit the withholding of payments to depositors, under certain conditions.

WHEREAS, The stress of economic conditions throughout the country has resulted in the closing of many banking institutions with resultant loss to the depositors thereof; and

WHEREAS, The moratoria declared in other jurisdictions, and the widespread fear of further loss is causing certain depositors in banking institutions in this Commonwealth to seek a preference by abnormally withdrawing funds therefrom, thereby threatening the closing of such institutions with attendant disaster to the remaining depositors and the community generally; and

WHEREAS, In order to insure fair and impartial treatment of all depositors to the preference or prejudice of none, and to safeguard the banking institutions of this Commonwealth.

Section 1. Be it enacted, etc., That the Secretary of Banking is hereby authorized and empowered, in addition to all other powers, whenever in his judgment the circumstances warrant it, to authorize any bank, trust company, savings bank or other institution under his supervision, having the power to receive or receiving money on deposit:

(a) To extend, for such period as he deems necessary and expedient, payment of any time deposits where notice of withdrawal has been given or may hereafter be given;

(b) To postpone the payment of demand deposits for such time and to such extent as he deems necessary and expedient;

(c) To receive new deposits, which shall be segregated from deposits previously made and invested in liquid assets as defined by the Secretary. All such new deposits shall be available exclusively for the benefit of new depositors until such depositors have been paid in full, and shall always be withdrawable on demand without restriction.

Section 2. In order that any institution may avail itself of the

There is nothing in the Federal Constitution which prevents Congress, in legislating on matters within its sphere, from incorporating into an act a reference to the laws of the several states; or conferring upon the Comptroller of the Currency the same powers, with respect to national banking associations in any state, as are possessed by the state officials having supervision of banking institutions in that state, without enumerating them. The wisdom and necessity of such grant of authority is evident; for without it, national banking associations would be subjected to runs by depositors at a time when state banking institutions were on a restricted basis and not subject to such runs; and Congress had the power to grant the Comptroller such authority.

As to the general powers of the Comptroller of the Currency with respect to national banking associations, see Acts of Congress of December 23, 1913, c. 6, sec. 10, 38 Stat. 261; June 30, 1876, c. 156, sec. 1, 19 Stat. 63; R. S. sec. 5235; R. S. 5236; U. S. Code Title 12, secs. 1, 191, 193, 194. The powers of the Sec-

privileges herein granted, it shall accept such terms as the Secretary of Banking shall from time to time impose upon it.

Section 3. The Secretary of Banking is authorized and directed not to take possession of any institution under his supervision for failure immediately to meet its deposit liabilities, if it shall accept the terms imposed in accordance with the provisions of this act; and he is hereby relieved of any and all liability for permitting such institution to continue operations.

Section 4. Nothing herein contained shall be construed or interpreted as in any manner abating any of the powers granted to and exercised by the Secretary of Banking under existing law.

Section 5. The powers hereby conferred upon the Secretary of Banking shall terminate six months after the approval of this act by the Governor; but the Governor may extend the effective period of this act, by proclamation, for an additional period not exceeding two years.

Section 6. This act shall become effective immediately upon its approval by the Governor, and shall be retroactive to the twenty-seventh day of February, nineteen hundred thirty-three.

Approved—The 8th day of March, A.D. 1933, P. L. 9.

retary of Banking with respect to banking institutions under his supervision are likewise very broad. See Acts of June 15, 1923, P. L. 809, secs. 20, 21, 22, 27, 29, 31, 36; May 5, 1927, P. L. 762, sec. 7.

Upon the Comptroller of the Currency authorizing a national banking association to go upon a restricted basis, in the same manner as a state banking institution located in the same state was authorized to do, the national bank, as respects its restricted deposits, was thereafter acting under the orders of the Comptroller and, to a limited degree, may be said to be under his control. The purpose of the enactment,—in conformity with the national banking system, (Davis v. Union Savings Bank, 161 U. S. 275, 284)— was to prevent any priority or preference among depositors; to secure to all depositors—in view of the bank's immediate inability to pay depositors in full—a just and equal distribution of its assets, and prevent the very thing appellant is, seeking to secure by this action, to wit, payment in full to some and corresponding loss to others; and yet, at the same time, not absolutely close the bank's doors and destroy its business and good will; in the hope that when the crisis was past and confidence restored and normal values were established, the bank could open generally and all depositors be paid in full.

Incorporated banks are peculiarly the subject of supervision by government. Laws regulate their incorporation, their receipt of deposits, their reserves, their conduct; provide for a preference of deposits over general debts; and, on insolvency, or inability to pay all depositors on demand, secure the equal treatment of all depositors and prevent preferences in favor of some to the injury of the rest.

If the General Assembly—or the Congress, as the case may be,—in the banking crisis which existed in February and March, 1933, deemed it advisable to per-

mit banking institutions, which, in the opinion of the Secretary of Banking—or, as respects national banks, the Comptroller of the Currency—were only temporarily embarrassed and not hopelessly insolvent, and were likely under favorable conditions to be able to resume normal business, to remain open only for the receipt and payment of new deposits, but to restrict temporarily the withdrawal of their existing deposits, it could lawfully do so. Such action, having in view the just and equal distribution of the bank's assets among all its depositors, in the language of Chief Justice FULLER in Merrill v. Nat. Bank of Jacksonville, 173 U. S. 131, 147, "involves no invasion of prior contract rights of any such creditor."

If the defendant bank had closed its doors on February 28, 1933, and been taken over by the Comptroller of the Currency, the appellant would have had no preference over other depositors by reason of having given notice of withdrawal of his deposit. Its remaining open, with the approval of the Comptroller, but on a restricted basis, as respects deposits then existing, (see Com. ex rel. Attorney General v. U. S. Fidelity & Guaranty Co., 314 Pa. 140) did not give appellant a preference he could not have had if it had closed, nor secure him any advantage over other depositors existing at the close of business on February 28, 1933. The status of depositors at the close of business on February 28th remained the same after the opening on a restricted basis, pursuant to the authority of Congress of February 25th, extending to the Comptroller such powers as were conferred on the Secretary of Banking of this Commonwealth by resolution of February 27th.

That the action of the General Assembly of the State of Pennsylvania, which, by authority of Congress, the Comptroller was authorized to extend to national banking associations, was not an unconstitu-

tional impairment of the obligation of contracts (Art. I, sec. 10) nor repugnant to the due process and equal protection clauses of the 14th Amendment of the Federal Constitution, is settled by the decision of the United States Supreme Court in Home B. & L. Assn. v. Blaisdell, 290 U. S. 398 (decided January 8, 1934, opinion by Chief Justice HUGHES).

Furthermore, the record shows that the defendant bank is now, and was at the time of bringing this action, in the custody and control of a conservator, an officer appointed by the Comptroller of the Currency, with the same powers as a receiver. The effect of such an appointment is equivalent to the appointment of a receiver. A state court has no jurisdiction to declare preferences as respects the moneys of a national banking association in the hands of a receiver or conservator. Upon the receivership of a national banking association the federal law becomes the law of the distribution of the assets: 2 Morse on Banks and Banking, p. 1910 (6th Ed.); First Nat. Bank v. Selden, 120 Fed. 212; Steele v. Randall, (CCA 8th) 19 Fed. (2) 40.

The assignment of error is overruled and the order of the court below affirmed.