SADLIER, Receiver, Respondent, vs. LAY, Appellant.

*October 12—November 10, 1936.*

For the appellant there was a brief by *Eberlein & Larson* of Shawano, and oral argument by *M. G. Eberlein.*

*P. J. Winter* of Shawano, for the respondent.

WICKHEM, J.   On the 6th of February, 1933, the First National Bank of Clintonville was a national bank operating in the city of Clintonville. Defendant, John J. Lay, was the owner of eight shares of capital stock of the par value of $400, and on that date transferred this stock to his son, Carlton E. Lay, in good faith, for valuable consideration, and with no knowledge of any actual or impending insolvency of the bank. On March 6, 1933, the President of the United

States issued a proclamation declaring a national banking holiday for all national banks in the United States. On March 9, 1933, the Bank Conservation Act, 12 USCA, § 201 *et seq.,* was passed, which provides that the comptroller of currency may appoint a conservator whenever he deems it necessary to conserve the assets of the bank for the benefit of the depositors and other creditors. By the terms of this act the conservator takes possession of the books, records, and assets of the bank, and has the duty of taking such steps as may be necessary to conserve its assets pending further disposition of its business. He has all the rights, powers, and privileges of a receiver of an insolvent national bank. The act provides that during the period of his possession the rights of all parties with respect to the bank shall, subject to other provisions of the chapter, be the same as if a receiver had been appointed therefor. The comptroller may ultimately in his discretion terminate the conservatorship and permit a bank to resume the transaction of its business, subject to such conditions as he may prescribe. Prior to the termination of the conservatorship, the comptroller may require the conservator to set aside and make available for withdrawal by creditors on a ratable basis such amounts as in the opinion of the comptroller may safely be used for this purpose. All new deposits are required to be segregated and kept on hand in cash or obligations of the United States, or deposited in the Federal Reserve Bank. Section 64, title 12, Banks and Banking, USCA, reads as follows:

"The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to

meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure."

A conservator was appointed for the Clintonville bank on March 23, 1933, which was less than sixty days after the transfer of the stock by defendant.

The question in this case is whether the appointment of a conservator is the date "of the failure of such association to meet its obligations." It is contended by defendant that a showing of actual insolvency is required or that the appointment of a receiver must be taken as such date. The trial court was correct in its conclusion. The mere declaration of a bank holiday by the President of the United States in response to a national emergency could not be taken as the date "of the failure of such association to meet its obligations." This proclamation applied to all banks and prohibited not merely the payment but the presenting of claims, and was open to no inference applicable to a particular bank that that bank was unable to meet its obligations. Solvent or insolvent, it was prohibited from meeting its obligations. As soon as the holiday ended, banks desiring to reopen for the performance of all usual and normal banking functions were required by executive order to obtain a license therefor from the secretary of the treasury. The bank in question never secured such a license and, as heretofore stated, a conservator was appointed for it. It is plain that a conservator was to be appointed only in cases where in the judgment of the comptroller of the treasury the conditions of a particular bank were sufficiently involved so that it could not be permitted to operate on an unrestricted basis. It was either

insolvent or in such precarious condition by reason of frozen and impaired assets that to permit operation on an unrestricted basis might result in the vigilant depositors withdrawing all of their funds, thus forcing the other creditors to await the liquidation of slow or impaired assets, and subjecting them to delays and the risk of loss. Thus, the basic reason for a conservatorship is the inability of the bank to respond to its obligations as a whole, at least in accordance with the terms of these obligations. The conservator has all the powers of a receiver, distributes the liquid assets on a ratable basis, and prohibits the full withdrawal of deposits because the condition of the bank requires such action if ultimate losses are to be avoided or minimized. His appointment evidences a determination by the comptroller that a bank is in such condition as to need his services, and the time of appointment fixes the "date" for the purposes of the sixty-day statute. See *Pyne v. Jackson* (D. C.), 12 Fed. Supp. 653; *Commonwealth v. United States F. & G. Co.* 314 Pa. 140, 170 Atl. 686; *Pestcoe v. Sixth Nat. Bank of Philadelphia,* 112 Pa. Super. 373, 171 Atl 302.

*By the Court.*——Judgment affirmed.