Goess, Receiver, Appellant, *v.* Myers.

Argued October 18, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Lemuel B. Schofield,* for appellant.

*Harry Polish,* for appellee.

Opinion by Baldrige, J., January 31, 1939:

This action in assumpsit is by the receiver of the Harriman National Bank and Trust Company of the City of New York, hereinafter referred to as the bank, to enforce the liability of the defendant as a stockholder after an assessment had been made by the Comptroller of the Currency upon the stockholders of the bank for the par value of the capital stock held by them at the time of its failure.

The essential facts adduced by plaintiff were not denied by any evidence offered by the defendant and are not in dispute. They may be stated as follows:

On September 23, 1932, the plaintiff bank issued to the defendant a certificate of ten shares of its capital stock of the par value of $100 a share. On January 26, 1933, the defendant assigned and transferred the ten shares to his son, Gerald H. Myers, to whom on the following day the bank issued a new certificate.

On March 3, 1933, in accordance with a proclamation of the President of the United States, the bank closed its doors and from that date failed to meet its obligations.

On March 13, 1933, the Comptroller of the Currency entered an order, reciting that the bank was "unable to transact and carry on its ordinary banking business, or to exercise its usual banking functions without prejudicing the rights of depositors and other creditors, and appointed a conservator of the bank in pursuance of the power and authority vested in him under the provisions of the Bank Conservation Act of March 9, 1933, c. 1, §201 (12 USCA §201).

On October 16, 1933, Frederick V. Goess was appointed receiver and levied an assessment, November 13, 1934. On that date, the appellant gave written notice to the defendant and his son, demanding of them the sum of $1,000 which represented assessment due on the ten shares of stock. They refused payment and thereupon the appellant sued Gerald H. Myers and re-

covered a judgment, upon which an execution was issued, to which the sheriff made a return of nulla bona. Thereupon this suit was brought to enforce the liability imposed upon the defendant.

At the trial of the case before Judge BONNIWELL, sitting without a jury, David V. Penn, national bank examiner, testified that he made an examination of the bank and found that on March 3, 1933, its liabilities exceeded its assets to the extent of $8,039,076.53. The trial judge found in favor of the defendant on the theory that "it is only by the appointment of a receiver that the Comptroller of the Currency definitely determines that the bank shall not open."

The statutory right of the stockholders of a national bank is set forth by the Act of December 23, 1913, c. 6, §23 (12 USCA §§63, 64). After stating that they shall be individually responsible, each to the amount of his stock therein, it provides: "The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association *to meet its obligations,* or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability ......" (Italics supplied).

It is not the date of the appointment of a receiver, therefore, that governs, but the failure of the bank "to meet its obligations." Section 203 of the Bank Conservation Act, supra, provides that when a conservator is appointed, he shall, under the direction of the Comptroller, take possession of the books, records, and assets of every description "of such bank and take such action as may be necessary to conserve the assets of such bank pending further disposition of its business as provided by law. Such conservator shall have all the rights, powers, and privileges now possessed by or hereafter given receivers of insolvent national banks and shall be

subject to the obligations and penalties, not inconsistent with the provisions of this title, to which receivers are now or may hereafter become subject. During the time that such conservator remains in possession of such bank, the rights of all parties with respect thereto shall, subject to the other provisions of this subchapter, be the same as if a receiver had been appointed therefor."

It thus clearly appears that a conservator, for all practical purposes, is, in effect, a receiver, subject only to certain restrictions not involved herein.

In *Sadlier v. Lay* (Wis.), 269 N. W. 555, where the facts were almost identical, the court held that the basic reason for appointing a conservator is the inability of a bank to respond to its obligations, and that his appointment evidences a determination by the Comptroller that a bank is in such condition as to need his services and that the date a conservator is appointed fixes the date for the purposes of the sixty-day provision in the statute, citing in support of that conclusion *Com. ex rel. v. U. S. Fidelity & Guaranty Co.*, 314 Pa. 140, 170 A. 686. In that case, the defendant had delivered its bond to the Commonwealth to enable the Tulpehocken National Bank & Trust Company to comply with the provisions of the Administrative Code requiring state depositories to furnish bond to secure payment of deposits to the Commonwealth. The state treasurer made a draft on the bank for the amount of the deposit. The draft was not paid as the bank was in the hands of the conservator pursuant to the Bank Conservation Act. Judgment was confessed in favor of the Commonwealth for the amount of the state's deposit. The question presented was whether the default on the part of the bank was within the meaning of the contract. Mr. Justice LINN, in referring to the Bank Conservation Act, said in his opinion (p. 144): "There was default from the moment the bank was placed in the hands of the conservator, just as there would have been default if a

receiver had been appointed, for, from that moment, the bank was no longer able to meet its obligations. That condition matured defendant's obligation to the State. See Restatement, Contracts, §324; *Central Trust Co. v. Chicago Auditorium Assn.*, 240 U. S. 581, 591 ...... (p. 145) Comparison of the Bank Conservation Act with the statutes governing receiverships (12 USCA, sections 191 to 200) shows that they are of the same species, differing principally in the object of the proceedings—the conservatorship looking to the possible rehabilitation; the receivership, to dissolution ...... (p. 147) During the conservatorship, payment is forbidden, except on condition not here present, just as it would be forbidden, if the comptroller had concluded that a receivership was necessary."

In *Pestcoe v. Sixth National Bank of Phila.*, 112 Pa. Superior Ct. 373, 171 A. 302, also quoted in *Sadlier v. Lay*, supra, this court said that the effect of the appointment of a conservator by the Comptroller of the Currency is equivalent to the appointment of a receiver. To the same effect is *Ward v. Simon et al.*, 23 Fed. Supp. 117 (U. S. D. C. E. D. Pa.) ; *Dehne v. Mine Safety Appliance Co.*, 94 Fed. 2d 956; *Willing v. Penna. Co. et al.*, 21 Fed. Supp. 233 (U. S. D. C. E. D. Pa.).

These cases are ample authority to justify the conclusion that on March 13, 1933, the day the Comptroller concluded the bank was unable to carry on its ordinary business and appointed a conservator, there was a failure on the part of the bank to meet its obligations, within the provisions of the statute. It necessarily follows that as sixty days had not then transpired since defendant had assigned his stock, he cannot escape liability for the assessment.

Judgment of the court below is reversed, and judgment is now entered for plaintiff in the sum of $1,000, with interest from December, 1934.