Ohio, Appellant, *v.* Union Trust Company of Pittsburgh, Exr.

76

Argued April 21, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

· *Harland I. Casteel,* with him *George Walter Smith* and *Campbell, Wick, Houck & Thomas,* for appellant.

*John H. Sorg,* with him *Edward B. Scull,* for appellee.

OPINION BY KELLER, P. J., September 27, 1939:

This action of assumpsit was brought on April 1, 1933 by the Superintendent of Banks of the State of Ohio (hereinafter called Superintendent) as statutory receiver or officer in charge of the liquidation of The Ohio Savings Bank and Trust Company of Toledo, Ohio (hereinafter called Ohio Bank) an insolvent bank of deposit, against the estate of a decedent, Mary E. C. Brace, in her lifetime a resident of Pennsylvania, to enforce her statutory additional liability as a stockholder of Ohio Bank, following an assessment levied upon the stockholders, equal to the amount of their stock, as necessary to pay the creditors of the bank.

We are concerned in this appeal only with the ques-

tion whether or not the plaintiff is entitled to a judgment for the amount of the assessment. We are not here concerned with whether the judgment is collectible, or whether the executor of the decedent has funds of the estate in its hands out of which the judgment can be satisfied in whole or in part; or has lawfully disbursed all of the personal estate. Those are matters within the jurisdiction of the orphans' court: *Phillips, Admr. v. Allegheny V. R. Co.*, 107 Pa. 465; *Strouse v. Lawrence, Admx.*, 160 Pa. 421, 28 A. 930. Nor are we now concerned with the question whether the real estate of the decedent, if she left any, is chargeable with the payment of any judgment recovered in the action, or whether the executor may have made itself personally responsible for its payment by distributing the funds in its hands without complying with the provisions of the Act of June 7, 1917, P. L. 447, sec. 46(c), pp. 511, 512, which prescribes the giving of actual notice of the filing of its account to creditors who gave written notice of their claims. See *Shugar's Est.*, 312 Pa. 472, 167 A. 567. Those are matters for subsequent consideration and determination in proper proceedings.

Any creditor of a decedent, who holds a valid claim, not barred by limitation, may bring his action in the court of common pleas against the legal representative and have it reduced to judgment—provided the representative has not been discharged from his trust—wholly irrespective of whether the assets of the estate have been distributed or not. If the funds which came into the hands of the executor or administrator have been legally distributed pursuant to law and the order of the orphans' court, the judgment will be fruitless, unless additional funds come into the legal representative's hands; but, nevertheless, the plaintiff is entitled to secure his judgment: *Windber Trust Co. v. Wick*, 118 Pa. Superior Ct. 578, 581, 179 A. 926. Cases which deny the plaintiff the right to participate in a certain fund (*Pufahl, Receiver v. Estate of Parks*, 299 U. S. 217)

or to impose a personal liability on the executor or administrator (*Ward v. Integrity Trust Co.*, 19 Fed. Supp. 506) are not applicable.

On the trial of the present action the court directed a verdict for the defendant. From the judgment entered on this directed verdict, plaintiff has appealed. The judgment must be reversed; but a secondary question is also involved, to wit, whether judgment non obstante veredicto should be entered for the plaintiff or a new trial be granted.

The material facts are scarcely in dispute and may be summarized as follows:

Mary E. C. Brace, a resident of Allegheny County, Pennsylvania, died August 22, 1930, having made her last will and testament of which she appointed The Union Trust Company of Pittsburgh the executor. Letters testamentary were issued to it in due course.

At the time of her death she was the owner of sixteen shares of the capital stock of Ohio Bank, each having a par value of $100.

Article 13, section 3, of the Constitution of Ohio, adopted in 1912, imposes liability on stockholders of corporations authorized to receive money on deposit, "to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested therein." The entire section is printed in the margin.[1]

---

[1] "Personal Liability of Stockholder

"Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him, or her; except that stockholders of corporations authorized to receive money on deposit shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporations, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares. No corporation not organized under the laws of this state or of the United States, or person, partnership or association, shall use the word 'bank', 'banker', or 'banking' or words of similar meaning

The statutory provision carrying this section into effect is found in section 710-75 of the General Code, relating to Banks and Trust Companies, and is as follows:

"Stockholders of banks shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such bank, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares. The stockholders in any bank who shall have transferred their shares or registered the transfer thereof within sixty days next before the failure of such bank to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way recourse which such stockholders might otherwise have against those in whose names such shares are registered at the time of such failure. At any time after taking possession of a bank for the purpose of liquidation when the superintendent of banks ascertain that the assets of such bank will be insufficient to pay its debts and liabilities he may enforce the individual liability of stockholders." With the exception of the last sentence, this is almost identical with the provisions of section 64, of Title 12 of the U. S. Code—Act of December 23, 1913, c. 6, sec. 23, 38 Stat. 273—relating to the individual liability of shareholders of national banking associations. The decisions of the courts construing the federal statute will be pertinent, therefore, in passing upon the meaning of the statute under consideration.

---

in any foreign language, as a designation or name under which business may be conducted in this state unless such corporation, person, partnership or association shall submit to inspection, examination and regulation as may hereafter be provided by the laws of this State."

Both statutes, that of Ohio as well as of Congress, fix the *failure* of a bank *to meet its obligations* as the circumstance on which is based the liability of the stockholder to pay an additional amount, not exceeding the par value of the stock held by him, as fixed by the Superintendent (or the Comptroller of the Currency) after he ascertains that the assets of the bank will be insufficient to pay its debts and liabilities—that is, that it is insolvent. They also provide that any stockholder of a bank who may have transferred his shares, or registered the transfer thereof, within sixty days *next before* the failure of the bank to meet its obligations shall likewise be liable to the same extent as if he had made no transfer, to the extent that the subsequent transferee fails to meet such liability. The evident purpose of this latter provision was to reach the stockholder who may have learned or suspected that the bank was in financial difficulties and transferred his stock in order to escape the statutory liability to assessment in case of its insolvency.

The liability of the stockholder to assessment, in case the insolvency of the bank is subsequently ascertained, is fixed as of the date of the bank's failure to meet its obligations, not as of the date the insolvency is ascertained or determined. They are not identical. A bank may fail to meet its obligations because of frozen or non-liquid assets and yet not be insolvent. But if it turns out that it is insolvent, the controlling date as to liability relates back to the time the bank failed to meet its obligations, in order to determine who are the persons against whom the statutory additional liability is to be enforced: *Goess, Receiver, v. Myers,* 134 Pa. Superior Ct. 272, 4 A. 2d 184; *Henderson v. Gill,* 127 Pa. Superior Ct. 416, 193 A. 61; *Adams v. Nagle,* 303 U. S. 532; *Ward v. Simon,* 23 Fed. Supp. 117 (E. D. of Pa.); *Willing v. Jensen,* 17 Fed. Supp. 596 (E. D. of Pa.); *Todd v. Russell,* 20 Fed. Supp. 936 (S. D. of N. Y.); *Friede v. Mackey,* 10 N. E. 2d 102 (Mass.); *Sadlier v.*

*Lay,* 222 Wis. 641, 269 N. W. 555. And, primarily, it is the stockholder of record at that time who is liable to the assessment: *Rankin v. Fidelity Ins. T. & S. D. Co.,* 189 U. S. 242, 246; *Earle v. Carson,* 188 U. S. 42; *Friede v. Mackey,* 10 N. E. 2d 102 (Mass.); but the *real owner when the operations of the bank were suspended* may be held liable for the assessment: *Hulitt v. Ohio Valley National Bank,* 204 U. S. 162, 164, 170. No transfer or attempted transfer, by delivery of the stock certificate, subsequent to the closing or taking over of the bank by the Superintendent (or Comptroller) can relieve one who was a stockholder on that date from being responsible for the payment of the statutory additional liability, when determined by the Superintendent (or Comptroller) to be necessary to pay the bank's debts or liabilities because of its insolvency. In *Williams, Receiver, v. Cobb,* 242 U. S. 307, the transfer of the stock by the executor to itself as trustee, under order of court, was made before the bank failed to meet its obligations. The sixty day provision of the Act of Congress of December 23, 1913, supra, sec. 64, Title 12 U. S. Code, was not in force when the bank in that case became insolvent.

On August 17, 1931, the Superintendent took over the Ohio Bank for liquidation, and on that date the bank closed its doors and ceased to transact its corporate business or make transfers of capital stock on its books. Thereafter ordinary deposits subject to check could not be drawn out, and checks drawn on the bank and in process of collection when it closed and the Superintendent took charge, were dishonored and returned unpaid. This constituted a *failure to meet its obligations: Goess, Receiver, v. Myers,* 134 Pa. Superior Ct. 272, 4 A. 2d 184; *Com. ex rel. v. U. S. F. & G. Co.,* 314 Pa. 140, 145-147, 170 A. 686; *Pestcoe v. Sixth Nat. Bk.,* 112 Pa. Superior Ct. 373, 382, 171 A. 302. There is no distinction in this respect between national and state banks. It is not the failure of the national bank to pay its out-

standing bank notes, which constitutes *the* failure to meet its obligations, though that may be *a* failure, if the reserve fund deposited with the Government as security for the note issue proves insufficient—a very unusual situation. It is the failure of the bank to pay its depositors on demand which constitutes in most cases its failure to meet its obligations. And the closing of the bank, which prevents the depositors from presenting their checks and making demand, constitutes a failure to meet its obligations.

When Ohio Bank closed its doors and failed to meet its obligations sixteen shares of its capital stock were registered in the name of Mary E. C. Brace. She had been the owner of them at the time of her death and no sale or transfer of them prior to that date had been made by her executor.

After the bank was closed and taken over by the Superintendent for purposes of liquidation, no change in the ownership of stock could take place which would relieve Mrs. Brace's Estate from the statutory additional liability as a stockholder after the Superintendent ascertained that the bank was insolvent and that an assessment was necessary to pay its debts and liabilities: *Ward v. Simon*, 23 Fed. Supp. 117 (E. D. of Pa.); *Irons v. Mfrs. Nat. Bk.*, 17 Fed. 308 (C. C. A. 7).

On or about December 15, 1931, the Superintendent of Banks ascertained that the assets of the bank would not be sufficient to pay the creditors of the bank and that an assessment upon the stockholders of the bank of an amount equal to the amount of their stock, as provided in Section 710-75 of the General Code of Ohio, would be required to pay its debts and liabilities; and he accordingly levied the assessment and notified the stockholders of the bank of record as of August 17, 1931, notice of such assessment having been sent to "Mary E. C. Brace, c/o Trust Dept. Union Trust Co. Exr. P. O. Box 755, Pittsburgh Pa." This original letter or notice was produced by the defendant on the trial, and

a letter was written by it to the Attorney for the Estate concerning it, dated December 23, 1931, thus showing its receipt between December 15 and December 23, 1931. The Deputy Superintendent of Banks testified that the notices were mailed out on December 15th and the court has a right to consider the probability of a reasonably prompt delivery.

As we view the case the proceedings in the orphans' court subsequent to August 17, 1931, taken or done apparently without knowledge, on the part of the court, of the closing of the bank and its failure to meet its obligations, could not affect, or release or discharge, the liability of the estate of Mary E. C. Brace to pay any assessment that might be levied by the Superintendent to enforce the stockholders' liability under Section 710-75 of the General Code; nor could they impose such liability on persons to whom the court might *order* the shares to be distributed: *Ward v. Simon,* supra.

As a matter of fact the shares were never actually distributed or transferred to any person or corporation after August 17, 1931 up to the date of the trial; nor could they be after the Superintendent took charge, so as to affect the liability of the Estate of Mrs. Brace.

It follows that the filing by the Executor of what it designated as its "first and final account",[2] its confirmation and presentation to the court on October 20, 1931, the decree of distribution filed November 20, 1931, which became final on November 30, 1931, and which ordered the executor to distribute the balance of cash and securities accounted for and in its hands as executor, including the sixteen shares of stock of Ohio Bank, to itself as trustee under three separate trust estates created by the will—five and one-third shares of said bank stock being allocated to each estate—neither

[2] A second account seems to have been filed in 1933, which was adjudicated by decree entered July 18, 1933, to which no exceptions were filed. It does not appear whether plaintiff was given actual notice of the filing of this account.

affected the liability of the Estate of Mrs. Brace nor imposed liability on the several trust estates or their beneficiaries.

The distribution never was actually carried out, and, as a practical matter, could not have been, but in any event, ownership of the stock on August 17, 1931, the date when the bank failed to meet its obligations, fixed the liability of the stockholder for payment of any assessment subsequently levied by the Superintendent when he ascertained the insolvency of the bank: *Goess, Receiver, v. Myers,* 134 Pa. Superior Ct. 272, 4 A. 2d 184,

The regularity of the proceedings in the State of Ohio in connection with the taking over of Ohio Bank by the Superintendent and the levy by him of an assessment of 100% stock liability on all the outstanding stock of said bank was passed upon and upheld by the Court of Appeals of Lucas County, Ohio, on April 20, 1934, in the case of *Baumgardner et al. v. State, ex rel. Fulton, Superintendent of Banks,* 48 Ohio App. 5, 192 N. E. 349, and a motion for an order directing the Court of Appeals of Lucas County to certify its record in said case to the Supreme Court was overruled by the latter court on September 26, 1934—the records of which were introduced in evidence on the trial of this case. In the opinion of the Court of Appeals it clearly appeared that the time of the closing of the bank, August 17, 1931, was held to be the date which fixed the debts or obligations of the bank payable from the assessments levied against the stockholders, and consequently that the levy was to be assessed against the stockholders of the bank of that date.

The learned judge of the court below correctly ruled that under the decisions of our Supreme Court in *Broderick v. Stephano,* 314 Pa. 408, 171 A. 582, and *Lawhead, Receiver, v. Craig, Exr.,* 315 Pa. 49, 50, 172 A. 104, and of this court in *Squire v. Fridenberg,* 126 Pa. Superior Ct. 508, 191 A. 631, the regularity of the assessment was to be determined by the laws of Ohio,

and if regular, an action for its recovery could be maintained in this State. The learned judge's error consisted in his holding that the decree of the Orphans' Court, made after August 17, 1931, the date the bank closed, directing the executor to transfer or distribute the stock held by the decedent in Ohio Bank to itself as separate trustee for each of her three daughters, had the force or effect of releasing the decedent's estate from liability to pay the assessment subsequently levied by the Superintendent on the stockholders as necessary to pay the debts and obligations owing by the bank on the day it closed its doors, to wit, August 17, 1931.

The secondary question arises as to whether on the record in the case the plaintiff is entitled to the entry of judgment non obstante veredicto in its favor, or to a new trial.

It has been frequently ruled that in order to move for judgment non obstante veredicto under the Act of April 22, 1905 P. L. 286, a *written* point requesting binding instructions must have been presented by the party moving for judgment non obstante veredicto. However, we are to be governed by the record, not by the court's recollection of the record. It appears that on April 27, 1936, before the case was fully closed, the plaintiff moved orally for a directed verdict. He was asked by the court if his point was written out, to which he replied, "No." Court then adjourned until Wednesday morning, April 29th, when additional testimony was taken. The court then charged the jury as follows:

"Members of the Jury: In the case in which you have been sworn, Counsel on both sides agree that there are no questions of facts to be decided by the Jury, and that the decision of the case depends altogether on questions of law. Under the circumstances, it is the duty of the Court to direct a judgment to be entered and a verdict to be entered either in favor of the Plain-

tiff or in favor of the Defendant. The Court now directs the Jury to return a verdict in favor of the Defendant."

Mr. Smith [Attorney for Plaintiff] "Note an exception."

On May 1, 1936, the plaintiff filed the following motion:

"And now, May 1, 1936, the plaintiff, by Campbell, Wick, Houck & Thomas, its attorneys, a point for binding instructions in its favor having been declined by the Court, moves the Court to have all the evidence taken upon the trial duly certified and filed so as to become part of the record and for judgment non obstante veredicto upon the whole record," on which the court, the same day, without objection or demur, made the following order: "And now, to wit, this 1st day of May, 1936, the foregoing motion presented, it is Ordered to be filed and it is Ordered that the evidence taken upon the trial of the above case be duly certified so as to become a part of the record."

In its opinion filed August 30, 1938, the court stated that plaintiff's written point for binding instructions was not filed until May 1, 1936.

The docket entries in the case show: "April 29, 1936—Defendant's points filed. Plaintiff's points filed. Eo die verdict for defendant."

The points attached to the record show that they were filed on April 29, 1936.

It is true that the court stenographer who took the notes of testimony made no note of the filing of points by *either* party. It was not his duty to do so. His duty is to take and transcribe the testimony. It is the duty of the prothonotary, or his clerk, to note the filing of papers in court. We are of opinion that the *record* shows a sufficient compliance with the Act of 1905 to warrant the entry of judgment non obstante veredicto.

Assignments 1, 2 and 3 are sustained. The judgment is reversed and is now entered in favor of the plaintiff and against the defendant for $1600, with interest from January 15, 1932—the amount to be calculated by the Prothonotary on notice to the parties.