## Kerr's Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*Carl W. Funk* and *J. Horace Churchman* of *Drinker, Biddle & Reath*, for exceptants.

*Joseph B. Quinn* and *Thomas J. Minnick, Jr.*, contra.

KLEIN, J., April 29, 1941.—The accountant, a closed National bank, is in process of liquidation by a receiver. During the course of the administration of the trust a mortgage in the sum of $25,000 was transferred from the bank's commercial department to this estate, one half of the investment being assigned to this trust and the other half to the trust for Anna K. Olney. Subsequent to the appointment of the receiver a substituted trustee was appointed which foreclosed the mortgage and is now in possession of the real estate.

The auditing judge, relying principally upon Tracy et al. v. Central Trust Company, 327 Pa. 77 (1937), decided that the accountant was liable for surcharge for loss, if any, suffered by reason of the investment in question. In the course of the hearings the auditing judge heard the testimony of several real estate experts concerning the value as of February 28, 1933, the day the bank closed, of the real estate securing the mortgage. From this testimony he found as a fact that the value of the real estate on that date was $24,420. He then allowed a set-off in this amount and surcharged the accountant with the difference of $580, one half of which, $290, was allocated to this trust.

The beneficiaries contend that, in view of the accountant's breach of trust in purchasing the investment from itself, it should be surcharged for the full amount of the wrongful investment. They maintain, further, that they should be given the right to receive dividends on the full amount of the investment from the insolvent bank and, as security for their claim, hold and enforce, if necessary, an equitable lien upon the mortgage investment.

We all concur with the auditing judge in his conclusion that the investment in question was improperly made. There is therefore little dispute as to the fact that a surcharge should be entered. If the accountant were still functioning as a banking institution, our problem would be simple. We would direct it to replace the investment with cash. The real difficulty in the present case concerns the manner in which the surcharge can be collected from a National bank which is in process of liquidation.

After a careful study of the problem, we have reached the conclusion that we are without authority to pass upon the question of the manner in which this surcharge can be enforced, as we have no jurisdiction over the receiver as liquidator of the affairs of the closed National bank. This jurisdiction is vested exclusively in the Federal courts, and Federal law and not State law governs the distribution of its assets: Pestcoe v. Sixth Nat. Bank of Phila.

et al., 112 Pa. Superior Ct. 373, 382 (1934) ; 2 Morse on Banks and Banking, p. 1910 (6th ed.) ; First Nat. Bank of Chicago v. Selden, 120 Fed. 212 (1903) ; Steele v. Randall et al. (C. C. A. 8th), 19 F. (2d) 40 (1927).

We think the situation in the present case is analogous to that which existed in Stopp's Estate, 330 Pa. 493 (1938). In that case the Supreme Court held that the extent of the right of the beneficiary of a trust to enforce a claim for breach of trust against an insolvent corporate trustee, which is being liquidated by the Secretary of Banking, can be determined only upon the audit of the account of the Secretary of Banking in the common pleas court and not by a decree of the orphans' court.

Since the investment has been transferred to a substituted trustee, we are of opinion that we have no further jurisdiction in the matter but must refer the parties to the Federal court having jurisdiction of the affairs of the receiver to determine the nature and extent of the estate's lien on the foreclosed real estate, the amount of the credit to be allowed against the surcharge, and the dividends to be allowed thereon out of the assets of the closed bank. See Fenelli's Estate, 330 Pa. 499 (1938).

In view of our conclusions, the finding of the auditing judge that the fair value of the real estate on the date of the bank's closing was $24,420, becomes immaterial. We sustain this finding of fact, however, as it is supported by ample, competent testimony, but refrain from expressing any opinion as to the effect to be accorded this finding in future proceedings.

Exceptants further contend that the auditing judge erred in allowing the accountant's commissions or compensation on both principal and income. They contend, further, that, if such commissions were properly allowed, the auditing judge erred in failing to direct that the amount of the surcharge should be set off against commissions.

We are all of the opinion that the action of the auditing judge in allowing these commissions was fully justi-

fied under the circumstances of this case. We believe, however, that such compensation should be credited against the indebtedness, in accord with the general rule that a fiduciary who is indebted to an estate should not receive commissions therefrom until his indebtedness is paid: McCalla's Estate, 33 D. & C. 643, 660 (1938) ; A. L. I. Restatement of Trusts, sec. 243, comm. (*b*). See also Bunton's Estate, 56 Pitts. 142 (1908), and Guffey's Estate, 66 Pitts. 51 (1917).

Exception 11 is therefore sustained and it is directed that the commissions allowed the accountant on principal and income be credited against the amount of the surcharge.

The exceptions are sustained to the extent indicated by this opinion and the adjudication, as modified, is confirmed absolutely.